[Civ. No. 29870. Fourth Dist., Div. Two. Nov. 8, 1983.]

BROWN COMPANY, Petitioner, v.
THE APPELLATE DEPARTMENT OF THE SUPERIOR COURT
OF SAN BERNARDINO COUNTY, Respondent;
ARTHUR W. CRAWFORD, Real Party in Interest.

**COUNSEL**

Brown & Brown and Donald B. Devirian for Petitioner.

Munns, Kofford, Hoffman, Hunt & Throckmorton and Gordon Hunt as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Kenneth E. Skousen for Real Party in Interest.

## Opinion

KAUFMAN, J.—Brown Company, doing business as Livingston-Graham (Livingston), sued in the municipal court to enforce a mechanic's lien. The trial court awarded judgment to Livingston on the mechanic's lien, but in a published opinion the appellate department of the superior court reversed the judgment on the ground the preliminary notice mandatorily required by Civil Code section 3097 was invalid. After the appellate department denied Livingston's request to certify the case to this court (see Cal. Rules of Court, rule 63), Livingston petitioned this court for a writ of review/mandate. We issued a writ of review.

### Facts

The appeal to the appellate department of the superior court was taken on a settled statement of facts from which the following facts appear.

Arthur W. Crawford (Crawford) entered into a written contract with East Valley Development (East Valley), a general contractor, for the construction of Crawford's personal residence on a lot he and his wife owned in Highland. East Valley in turn entered into a contract with Livingston pursuant to which Livingston was to furnish ready-mix concrete to the jobsite for use in construction of the house.

In connection with the contract between East Valley and Livingston, a business form of Livingston entitled "Notice of Sale" was made out. In spaces on the form calling for the names of the owner and the construction lender, East Valley was filled in as the owner and its address listed, and Crawford Investments was filled in as the construction lender. The information placed on the form as to the reputed owner and reputed construction lender was supplied by Bob Gardner, the employee of East Valley who ordered the concrete.

Livingston relied on the information supplied by East Valley's employee and made no effort to verify its accuracy by examining either the building permit or the records in the office of the county assessor or the county recorder.[1] On or about September 8, 1978, Livingston purported to serve by registered mail a preliminary notice as required by Civil Code sections 3097 and 3098. The notice was sent to East Valley as the "reputed owner/original contractor." A copy of the notice was also sent to Crawford Investments, 1770 North Arrowhead Avenue, San Bernardino, California, as

---

[1]There was no evidence below and the appellate record does not disclose what information these records would have revealed had they been examined.

the "reputed construction lender." Although Crawford Investments was the actual construction lender, Crawford and his wife Marjorie were the actual owners of the property, not East Valley.[2]

Even though he was president of Crawford Investments, Crawford testified he did not personally receive or process any preliminary notices sent to Crawford Investments as construction lender on any project and that he did not personally receive the preliminary notice sent Crawford Investments by Livingston on or about September 8, 1978.

Livingston delivered ready-mix concrete to the jobsite during the period April 9 to June 7, 1979. The reasonable value of the concrete was established to be $4,367.15. However, Livingston was not paid for the concrete.

Crawford admitted he had become aware that Livingston had delivered concrete to the jobsite, but he testified he acquired that knowledge long after the concrete had been delivered by Livingston.

The municipal court made findings favorable to Livingston including a finding that its giving preliminary notice to East Valley as the reputed owner was reasonable and in good faith and rendered judgment in favor of Livingston for foreclosure of the mechanic's lien. On appeal, the Appellate Department of the San Bernardino Superior Court reversed, holding Livingston's mechanic's lien could not be enforced against Crawford because the 20-day preliminary notice was premature and because Crawford as owner had not been served with the preliminary notice.

### PREMATURE NOTICE

Civil Code section 3097[3] provides that a claimant "must, as a necessary prerequisite to the validity of any claim of lien, . . . cause to be given *to the owner or reputed owner,* to the original contractor or reputed contractor, and to the construction lender, if any, or the reputed construction lender, if any, a written preliminary notice as prescribed by this section." (Civ. Code, § 3097, subd. (a); italics added.)

Subdivision (c) of section 3097 states: "The preliminary notice referred to in subdivisions (a) and (b) shall be given *not later than* 20 days after *the*

---

[2]Crawford had no interest in East Valley. However, he and David Huntley, the sole owner of East Valley, were co-owners of Crawford Investments (Crawford owning 51 percent and Huntley owning 49 percent) and shared offices together at 1770 North Arrowhead Avenue, the address of Crawford Investments.

[3]All statutory references are to the Civil Code unless otherwise noted.

*claimant* has first furnished labor, service, equipment, or materials to the jobsite . . . ." (Italics added.)

Observing that subdivision (c) of section 3097 provides for the giving of the preliminary notice by "the claimant" and that section 3085 defines "claimant" as one who is "entitled . . . to record a claim of lien . . .," the appellate department reasoned that one cannot be "entitled . . . to record a claim of lien" (i.e., be a "claimant") unless one has already bestowed labor on or furnished materials to the job. Thus, it concluded that Livingston's preliminary notice, given in September 1978 before it delivered concrete to the jobsite, was premature. We do not agree.

■ In prescribing that the preliminary notice "shall be given not later than 20 days after the claimant has first furnished labor, service, equipment, or materials to the jobsite, . . ." subdivision (c) of section 3097 does not specify an initial date for serving the preliminary notice nor does it specify a date before which notice may not be given; it merely provides a deadline or cutoff time after which a preliminary notice may not be served with respect to services theretofore performed or labor, service, equipment or materials theretofore furnished. Had the Legislature intended that a notice given after materials had been contracted for but before they had been delivered would not be effective, it would undoubtedly have prescribed a time before which notice could not be validly given. The·purpose of requiring notice to the owner is to alert the owner to the possible need for protecting himself or herself; and the earlier the notice is given the more likely it is the statutory purpose will be effectuated.

Moreover, the appellate department's interpretation of the word "claimant" would produce absurd results. It would create a paradox: the preliminary notice may be given only by one who is entitled to record a claim of lien, but one must first give the notice to become entitled to record a claim of lien. (Civ. Code, §§ 3085, 3097, subd. (a).) Thus, under the interpretation adopted by the appellate department no one could qualify as a "claimant" at the preliminary notice stage.

In addition, the appellate department's conclusion as to who may qualify as a "claimant" when combined with other portions of the statute results in a practical impossibility in respect to any job that takes more than 20 days. Under the interpretation adopted by the appellate department one cannot qualify as a "claimant" until he is in a position to assert a lien, but under section 3116 one is not entitled to assert a lien until after he has ceased furnishing labor, equipment or materials. Thus, the appellate department's ruling would provide only a 20-day window of time to which the notice could apply. No lien could be obtained for any work done or materials

furnished more than 20 days after the first work was done or the first materials furnished.

It is apparent that the word "claimant" as used in section 3097 was intended to include all potential lien claimants from whom labor, service, equipment or materials have been ordered or who have a contract to supply such labor, service, equipment or materials for use in the work of improvement.

The obvious purpose of the statutory requirement of a preliminary notice is to notify the owner, original contractor and lender of potential mechanic's lien claims. Allowing the notice to be given before the actual work is begun is consistent with the statutory purpose of giving notice, facilitates the constitutionally guaranteed right to claim for work or materials furnished, and avoids the absurd consequences that would result from the appellate department's interpretation of the law. We hold, therefore, that even though the preliminary notice was sent before the concrete was delivered, it was not for that reason premature or invalid.

### SERVICE ON REPUTED OWNER

■ Section 3097 requires the preliminary notice to be served upon "the owner or reputed owner" of the property. (See text following fn. 3, *ante.*) Livingston served East Valley as the reputed owner of the property, relying on information given by an employee of Crawford's general contractor, East Valley.

The appellate department held that East Valley was not the reputed owner of the property. The court also held Livingston was required to exercise alternative means of finding out who the actual owner of the property was; otherwise, the statute might not comport with procedural due process because the true owner would not necessarily receive the notice.

The spectre of unconstitutionality raised by the appellate department is a phantom issue. Section 3097 expressly contemplates service on the owner or the reputed owner. The term "reputed owner" clearly must mean something other than the actual owner or it is mere surplusage. Obviously, then, the Legislature has provided that the preliminary notice may possibly be sent to someone other than the actual owner of the property. (See *Bryan* v. *Abbott* (1900) 131 Cal. 222, 224 [63 P. 363]; *Corbett* v. *Chambers* (1895) 109 Cal. 178, 184 [41 P.873]; *Frank Pisano & Associates* v. *Taggart* (1972) 29 Cal.App.3d 1, 19 [105 Cal.Rptr. 414].) The constitutional problem, if any, from allowing service on the reputed owner lies precisely in the fact that the true owner does not receive the notice. The remedy, suggested by

the superior court, of requiring a claimant to make more effort to find out who the actual owner is by, for example, having the claimant ask to see the general contract, or checking out the information on the building permit, would not solve the constitutional problem, because such measures would still ofttimes result in someone other than the actual owner receiving the notice. A complete and accurate title search would ensure that the owner of record would receive the notice, but even then the actual owner might still be someone else.

In any event, the constitutional question was answered by the California Supreme Court in the case of *Connolly Development, Inc.* v. *Superior Court* (1976) 17 Cal.3d 803 [132 Cal.Rptr. 477, 553 P.2d 637]. The Supreme Court made a comprehensive constitutional analysis of the mechanic's lien law. The *Connolly* court held that "Even after the lien has been recorded [i.e., after the deprivation of the property has already taken place], or the stop notice filed, the owner in many instances could seek a mandatory injunction ordering the claimant to release the lien.[18] (See *People* v. *Paramount Citrus Assn.* (1957) 147 Cal.App.2d 399, 413 [305 P.2d 135]; 2 Witkin, Cal. Procedure (2d ed. 1970) pp. 1515-1516.) In any event, the owner need not wait until the claimant sues to enforce the lien; the imposition of that lien, and the owner's denial of its validity, comprise a controversy sufficient to permit an immediate suit for declaratory relief. (See Code Civ. Proc., § 1060.) Such a declaratory relief action can claim priority on the calendar of the trial court. (Code Civ. Proc., § 1062a.) [Fn. omitted.] Thus, by filing an action for injunctive or declaratory relief, the owner or lender can obtain a hearing either before imposition of the lien or within a reasonable period thereafter." (*Id.*, at pp. 822-823.)

Footnote 18 at page 823 states: "Despite the statutory requirement for a 20-day preliminary notice (§ 3097), *in some cases the owner or lender will not learn of the defect in the lien until after the lien has been imposed.* An obvious example is the lien which is defective on the ground that the lienor failed to comply with the preliminary notice requirement. Additionally, the preliminary notice need only state 'A general description of the labor . . . or materials furnished or to be furnished, and if there is a construction lender, he shall be furnished with an estimate of the total price thereof . . . .' (§ 3097, subd. (c)(1).) Thus a dispute concerning the exact amount due might not crystalize until after the lien is imposed." (Italics added.)

Thus, in upholding the constitutionality of the mechanic's lien law, the *Connolly* court expressly recognized there may be instances in which the true owner does not receive notice before the lien itself is recorded, as, for example, where a reputed owner is served. Pointing out that the owner has the right immediately to litigate the validity of the lien once it is recorded,

the court balanced the interests of the parties and found the deprivation to the owner relatively slight, because the owner retains the use and enjoyment of the property, whereas the harm to mechanics and materialmen of invalidating the lien procedure would be great, because a workman or a materialman would be at risk on an unsecured obligation. Moreover, the owner is in a position to protect himself by insisting on a performance bond, recording his contract and obtaining a payment bond, or requiring lien releases as progress payments are made. The mechanic's lien statutory scheme passes constitutional muster, or at least is not facially unconstitutional, even presuming some instances in which the actual owner does not receive the preliminary notice.

■ The question then remains whether East Valley was, as the trial court determined, a "reputed owner" within the meaning of the statute. The appellate department concluded it was not because it found no evidence that East Valley had the general reputation of being the owner of the property, or that it had, to all appearances, title to and possession of the property. The appellate department's analysis was based purely on dictionary definitions of "reputed owner," without taking account of the realities of the construction business and the mechanic's lien law. ■ The term "reputed owner" must be given a meaning in the context of the statutory scheme in which it appears and must be consistent with the purposes of the statutory provisions. ■ Considering these and the historical meaning ascribed to the term "reputed owner" as used in the mechanic's lien law we are persuaded the "reputed owner" who may lawfully be given the preliminary notice pursuant to sections 3097 and 3098 is a person or entity reasonably and in good faith believed to be the owner by those involved with the work of improvement including the general contractor and those furnishing labor, service, equipment or material to be used in the work of improvement. (See and cf. *Bryan* v. *Abbott, supra,* 131 Cal. 222, 224; *Corbett* v. *Chambers, supra,* 109 Cal. 178, 184-185; *Frank Pisano & Associates* v. *Taggart, supra,* 29 Cal.App.3d 1, 19; *Ingersoll* v. *Chaplin* (1932) 127 Cal.App. 290, 291 [15 P.2d 790].)

While section 3097 was first enacted in 1969 (Stats. 1969, ch. 1362, § 2, p. 2756), the term "reputed owner" is far from new. It was used in former Code of Civil Procedure section 1193, subdivision (a), pertaining to prelien notices (see *Frank Pisano & Associates* v. *Taggart, supra,* 29 Cal.App.3d 1, 17) and was used in sections prescribing the content of a claim of lien at least as early as 1895 (see *Corbett* v. *Chambers, supra,* 109 Cal. 178, 183-184). ■ In using the same term in section 3097 the Legislature is presumed to have known of and intended to adopt the meaning ascribed to it by preceding judicial decisions. (*Buchwald* v. *Katz* (1972) 8 Cal.3d 493, 502 [105 Cal.Rptr. 368, 503 P.2d 1376]; *Los Angeles Met. Transit Author-*

*ity* v. *Brotherhood of Railroad Trainmen* (1960) 54 Cal.2d 684, 688-689 [8 Cal.Rptr. 1, 355 P.2d 905].) Accordingly, the language of the court in *Corbett* v. *Chambers, supra,* 109 Cal. 178, at pages 184-185 is enlightening.

Said the court in relevant part: "The statute is a remedial statute, adopted in obedience to the requirements of the constitution (art. XX, sec. 15), and is to be liberally construed in furtherance of the purposes for which it was authorized. The persons for whose benefit the statute is enacted are not presumed to be versed in the niceties of pleading, and the notices, which under its provisions they are authorized to give, have regard to substance rather than form. The terms of the section clearly indicate that it was not the intention of the legislature that in the claim of lien which he files for record the claimant shall state the name of the real owner, at the risk of losing his lien if it shall turn out that he was in error. The provision therein that the claimant shall give the 'name of the owner or reputed owner, if known,' implies that, if he does not know the name of the owner, he may state this fact, and perfect his lien without naming an owner [citation], and, also, that *if, in good faith, he gives the name of a reputed owner, he shall not lose his lien if he shall afterward ascertain that some other person was the owner.* [Citation.] . . . In either case [whether the person is being designated as owner or reputed owner], *it is only the opinion of the claimant upon matters that are not presumptively within his knowledge, but which he has formed from external information*; and in that respect the notice which he is to file differs from a pleading in which a fact essential to a recovery must be definitely averred." (*Corbett* v. *Chambers, supra,* 109 Cal. 178, 184-185; italics added.)

Apparently, in attempting to give meaning to the term "reputed owner," the appellate department concluded that Livingston was not entitled to rely on the ownership information provided by the employee of the general contractor but was required to examine other sources of information such as the building permit, the tax assessor's records or the construction contract. Unless the appellate department meant to say that only the persons or entities described as the owner in such records can be a "reputed owner," a limitation for which we have found no authority, the question of what efforts Livingston made to ascertain the name of the owner goes not to the definition of "reputed owner" but to the question of whether Livingston reasonably and in good faith believed East Valley to be the owner or reputed owner. If in concluding that Livingston should have examined the mentioned records the appellate department was holding as a matter of law that Livingston could not otherwise have had a reasonable, good faith belief East Valley was the owner or reputed owner of the property, it was mistaken. Generally speaking, the questions of the claimant's reasonableness and

good faith in naming a reputed owner are questions of fact to be determined by the trier of fact and the question of good faith is peculiarly appropriate for determination by the trial court which sees and hears the witnesses.

Moreover, the statute contemplates that a materialman may rely on the general contractor for information as to who is the owner or reputed owner of the property. Subdivision (*l*) of section 3097 provides as follows: "Every written contract entered into between a property owner and an original contractor shall provide space for the owner to enter his name and address of residence; and place of business if any. The original contractor *shall make available the name and address of residence of the owner to any person seeking to serve notice* required by this section." (Italics added.) The statutory language does not require the contractor to show or the person seeking to serve notice to ask to see the contract;[4] it requires only that the "contractor shall *make available the name and address* of residence of the owner." (Italics added.) The conclusion is irresistible the Legislature intended that, in the absence of some indication to the contrary, a potential lien claimant should be permitted to rely on the information given by the general contractor concerning the owner or reputed owner of the property.

The appellate department relied on *Romak Iron Works* v. *Prudential Ins. Co.* (1980) 104 Cal.App.3d 767 [163 Cal.Rptr. 869] for the proposition that in determining who the reputed owner may be, one may not rely solely upon a representation by the general contractor. In *Romak* the plaintiff made inquiries of the general contractor asking who the construction lender was. The general contractor told the plaintiff it was then unknown whether there would be a construction lender. When the plaintiff sent out its preliminary notices, plaintiff wrote that the construction lender or reputed construction lender, if any, was not known. The *Romak* court held plaintiff had a duty to inspect the building permit and the construction trust deed for the listing of the lender's name and address. Two major factors distinguish *Romak* from the instant case. First, and fundamentally, the plaintiff in the *Romak* case was given no name and was told there was no known construction lender. Here, on the other hand, Livingston was given the name and address of a specific entity said to be the owner by the employee of the general contractor. There is a significant difference between being given the name and address of the owner upon inquiry and being given no name or address for the construction lender. The latter should perhaps provoke further inquiry, especially in view of the fact that construction of a project of any substantiality without a construction lender is a rarity. Had Livingston been informed the owner was unknown, undoubtedly it would have made some further inquiry.

---

[4]In this particular case, of course, it would be virtually nonsensical to have expected Livingston to ask to see the contract when it was told the general contractor was the owner.

Second, the provisions of subdivisions (i) and (j) of section 3097 relating to notice to the lender or reputed lender and relied on by the court in *Romak* suggest the plaintiff in *Romak* should have inquired further about the construction lender's identity. Both subdivisions (i) and (j) explicitly provide that the failure to include the required information on the form pertaining to the lender or reputed lender does not relieve the claimant of the duty to give preliminary notice required under the section. The court in *Romak* said: "The unmistakable thrust of subdivisions (i) and (j) is to impose on a prospective stop notice claimant the duty to examine either or both of the alternative sources of information they mention (the building permit and the specially indexed official records of the county) for the purpose of ascertaining the existence and identity of a 'construction lender' to whom he must deliver a preliminary 20-day notice 'as a necessary prerequisite to the validity' of a stop notice to be delivered later. (§ 3097, subd. (b).)" (*Romak Iron Works* v. *Prudential Ins. Co., supra,* 104 Cal.App.3d 767, 775.)

In contrast, unlike subdivisions (i) and (j), subdivision (*l*) relating to the owner or reputed owner does not contain a special provision that persons required to give preliminary notice under the section are not relieved of the duty by the failure of the contract to set forth the owner's name and address.

East Valley was Crawford's general contractor. Because of East Valley's statutory duty to make available the name and address of the owner (§ 3097, subd. (*l*)), Livingston was entitled to rely on the information given by East Valley as to the owner's name and address. The trial court's determinations that East Valley was the reputed owner of the property within the meaning of section 3097 and that Livingston served the preliminary notice on East Valley as the reputed owner reasonably and in good faith are amply justified by the record.

### Jurisdiction on Writ of Review (Certiorari)

Despite the fact the decision of the appellate department is legally erroneous, we are belatedly persuaded that we are without jurisdiction to annul the decision in this review (certiorari) proceeding.

Code of Civil Procedure section 1068 governs the circumstances in which a writ of review, or certiorari, may be granted: "A writ of review may be granted by any court, except a municipal or justice court, when an inferior tribunal, board, or officer, exercising judicial functions, *has exceeded the jurisdiction of such tribunal,* board, or officer, and there is no appeal, nor, in the judgment of the court, any plain, speedy, and adequate remedy." (Italics added.) Here, while the appellate department made an erroneous decision, it did not act without or in excess of its jurisdiction.

■ Where a court has basic jurisdiction over the parties and the controversy, it has the power to decide the issues before it. The power of the court should not be confused with the duty of the court. While the court has the duty in any case before it to decide correctly, implied in that duty is the possibility the court may decide wrongly. Its jurisdiction, or power to decide, is not in any way defeated or limited by a wrong decision. (*Estate of Gardiner* (1941) 45 Cal.App.2d 559, 563 [114 P.2d 643].) ■ Error committed by a court within the exercise of its jurisdiction is not reviewable by certiorari. (*Rodman* v. *Superior Court* (1939) 13 Cal.2d 262, 268 [89 P.2d 109]; *Johnson* v. *Superior Court* (1932) 121 Cal.App. 288, 291-292 [8 P.2d 1047].) In certiorari proceedings the only question is whether the lower court has exceeded its jurisdiction, and if not, no matter how grievously it erred to the prejudice of petitioner either in matters of fact or in matters of law, relief cannot be given. (*Paddon* v. *Superior Court* (1923) 65 Cal.App. 34, 38 [223 P.91].)

■ The case of *Auto Equity Sales* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937] does not aid the petitioner. In *Auto Equity Sales* the Supreme Court held that a deliberate refusal to follow a binding precedent of a higher court is a jurisdictional defect which renders the judgment of the lower court subject to restraint by writ. ■ In the instant case, however, there was no deliberate refusal of the appellate department to follow a binding decision of a higher court. On the contrary, the decision analyzed a number of relevant cases and statutes and came to the conclusion that the preliminary notice was invalid. The appellate department attempted conscientiously to follow the law. Its conclusions were wrong but there is no basis for annulling its decision by a writ of review.

■ The propriety of issuing a writ of mandate would be even more dubious. Livingston correctly states the principle that where the lower court's decision amounts to a denial of a fair hearing on the merits, a writ of mandate may be proper. (*Schweiger* v. *Superior Court* (1970) 3 Cal.3d 507 [90 Cal.Rptr. 729, 476 P.2d 97].) In the instant case, unlike *Schweiger* or *Vargas* v. *Municipal Court* (1978) 22 Cal.3d 902 [150 Cal.Rptr. 918, 587 P.2d 714], Livingston was not deprived by the appellate department of a fair hearing. The appellate department did not refuse to consider any issue presented on appeal. Livingston was not precluded from filing briefs or presenting oral argument on appeal.

We conclude there is no basis for annulment of the decision of the appellate department by writ proceeding. Accordingly, we reluctantly conclude the writ of review heretofore issued must be discharged and this proceeding

dismissed, and it is so ordered. In the interests of justice nevertheless Livingston shall recover its costs.

Morris, P. J., and Rickles, J., concurred.