[No. C055368. Third Dist. Jan. 8, 2009.]

MICHAEL JAMES TECKLENBURG, Petitioner, v.
THE APPELLATE DIVISION OF THE SUPERIOR COURT OF SAN
JOAQUIN COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Myron Moskovitz; Hakeen, Ellis & Marengo, Marshall & Marshall, Russell S. Humphrey; and Markus Mueller-Dombois for Petitioner.

No appearance for Respondent.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, J. Robert Jibson and Raymond L. Brosterhous II, Deputy Attorneys General; James P. Willett, District Attorney, Ronald J. Freitas and Janet L. Smith, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**CANTIL-SAKAUYE, J.**—At the direction of the California Supreme Court, we consider two issues regarding the sufficiency of the evidence to support defendant Michael James Tecklenburg's misdemeanor convictions of knowing possession or control of child pornography in violation of Penal Code section 311.11, subdivision (a).[1] We conclude substantial evidence supports his convictions and affirm the judgment.

### PROCEDURAL BACKGROUND

After a jury trial, defendant was found guilty of six misdemeanor counts of knowing possession or control of child pornography in violation of section

---

[1] Hereafter, undesignated statutory references are to the Penal Code.

311.11.[2] The trial court suspended imposition of sentence and placed defendant on three years' formal probation and ordered defendant to serve 90 days in county jail. Defendant was also ordered, among other things, to register as a sex offender pursuant to section 290. Defendant timely appealed. We next describe the procedural route of the case and the issues framed for us by the Supreme Court.

On appeal to the Appellate Division of the San Joaquin Superior Court, defendant claimed (1) there was insufficient evidence to show it was defendant who possessed the child pornography found on the computers that were analyzed, (2) there was insufficient evidence to show he knowingly possessed child pornography in the absence of evidence that he knew of the existence of the computer's temporary Internet files, and (3) the reporter's transcript of the trial contained too many omissions to permit fair consideration of his appeal. The appellate division affirmed the judgment.

Defendant petitioned the appellate division for rehearing and applied for certification for transfer to this court. (Cal. Rules of Court, former rule 8.708(c), rule 8.1005.)[3] The appellate division denied both the request for rehearing and the application for transfer. Defendant then petitioned this court directly for transfer. (Code Civ. Proc., § 911; rule 8.1008(b).) We denied his petition for transfer. Rule 8.500(a)(1) expressly precluded defendant from petitioning the California Supreme Court for review[4] of our decision to deny transfer.

Defendant filed an original "petition for writ of mandate or other appropriate relief" in the Supreme Court, claiming at this point he had no adequate

---

[2] Former section 311.11, subdivision (a), applicable to defendant's case, provided: "Every person who knowingly possesses or controls any matter, representation of information, data, or image, including, but not limited to, any film, filmstrip, photograph, negative, slide, photocopy, videotape, video laser disc, computer hardware, computer software, computer floppy disc, data storage media, CD-ROM, or computer-generated equipment or any other computer-generated image that contains or incorporates in any manner, any film or filmstrip, the production of which involves the use of a person under the age of 18 years, knowing that the matter depicts a person under the age of 18 years personally engaging in or simulating sexual conduct, as defined in subdivision (d) of Section 311.4, is guilty of a public offense and shall be punished by imprisonment in the county jail for up to one year, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both the fine and imprisonment." (See Stats. 1996, ch. 1079, § 6, p. 7375; Stats. 1996, ch. 1080, § 6, p. 7399.) Section 311.11, subdivision (a), was amended in 2006 to make the offense either a felony or a misdemeanor. (Stats. 2006, ch. 337, § 23, eff. Sept. 20, 2006; Prop. 83, § 8, approved Nov. 7, 2006, eff. Nov. 8, 2006.) The operative language defining the offense did not change.

[3] Undesignated rule references are to the California Rules of Court.

[4] Rule 8.500(a)(1) provides: "A party may file a petition in the Supreme Court for review of any decision of the Court of Appeal, including any interlocutory order, *except the denial of a transfer of a case within the appellate jurisdiction of the superior court.*" (Italics added.)

remedy at law and that relief from the Supreme Court was "his only remaining avenue for justice for himself and a fair trial for other persons who might in the future be charged with a violation of Penal Code § 311.11[, subd.] (a)." Defendant repeated the same issues he raised on appeal to the appellate division and asked the Supreme Court to direct this court to transfer his appeal to ourselves (relief precluded by rule 8.500(a)(1)).

At the direction of the Supreme Court, the Attorney General filed two informal oppositions to defendant's petition. The Attorney General argued the prerequisites for extraordinary relief had not been met, there was substantial circumstantial evidence to support defendant's convictions, and the record was adequate for review.

The Supreme Court refiled defendant's writ of mandate petition "as a petition for writ of certiorari sub nom. 'Tecklenburg v. Appellate Division, Superior Court for San Joaquin County'" and granted it as such. The Supreme Court then transferred the cause to us with directions that we issue the writ of review[5] to the appellate division and decide the following questions: "(1) Was the evidence sufficient to establish [defendant's] personal possession of the child pornography files on his family's computer? (2) May [defendant] be convicted of possessing child pornography stored in a computer's cache files absent some evidence that he was aware those files existed? (See *United States v. Kuchinski* (9th Cir. 2006) 469 F.3d 853; *Barton v. State* (June 21, 2007, A07A0486) [286 Ga.App. 49 [648 S.E.2d 660]], 2007 WL 1775565.)"

After the unusual procedural route of the case, we complied with the orders from the Supreme Court, vacated our order denying transfer, issued the writ of review as directed and now proceed to consider the questions posed by the Supreme Court.[6]

We start with a review of the evidence presented at defendant's trial.

---

[5] Code of Civil Procedure section 1067 allows the writ of certiorari to be called the writ of review.

[6] Code of Civil Procedure section 1068, subdivision (a), authorizes the grant of a writ of review "when an inferior tribunal, board, or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board, or officer, and there is no appeal, nor, in the judgment of the court, any plain, speedy, and adequate remedy." (See also Code Civ. Proc., § 1074.) The writ is not available to review ordinary legal error by a lower court, but only *jurisdictional* errors. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 454–455 [20 Cal.Rptr. 321, 369 P.2d 937] [writ appropriate when lower court refuses to follow binding precedent]; *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 290–291 [109 P.2d 942] [acts that exceed court's power under constitutional, statutory, or binding case law are in excess of jurisdiction]; *Brown Co. v. Appellate Department* (1983) 148 Cal.App.3d 891, 904 [196 Cal.Rptr. 258] [neither certiorari nor mandate is appropriate where lower court's decision, albeit erroneous, was within its jurisdiction]; see *Dvorin v. Appellate Dept.* (1975) 15 Cal.3d

## FACTUAL BACKGROUND

*The Home Computer:*

On September 9, 2004, the San Joaquin County Sheriff's Department received the hard drive from defendant's home computer to review in connection with another investigation. The computer had been kept in the kitchen of defendant's family home. The computer was used by defendant, possibly defendant's wife, and at least several of his five children. The computer hard drive was given to Dale Rogers, an examiner for the Sacramento Valley Hi-Tech Crimes Task Force.

Rogers explained that a hard drive is a storage medium for the content of the computer, that files deleted from a computer are not gone from the computer, that such deleted files remain in unallocated space on the hard drive until they get overwritten in whole or in part, and that such files can be recovered forensically from the unallocated space. Files recovered from unallocated space will not have their file name or date/time stamps. He also explained that computers have a folder, generally in their operating system, for temporary Internet files (TIF's). Every time a Web page is accessed on the Internet by the computer, the computer automatically saves the material, without any affirmative action by the computer user, in a TIF.[7] If the TIF storage is filled up, it will spill over into unallocated space. Periodically, older TIF's may be automatically deleted and become unallocated. Finally, TIF's may also be manually deleted. Data or images found in unallocated space on a hard drive may, therefore, result from deleted, saved or downloaded files or come in various ways from TIF's. There is often no way to determine the original source, but it can be said that at some point it was on the computer screen.

When Rogers received the hard drive from defendant's home computer, he went through standard forensic procedures to recover stored documents,

648, 650 [125 Cal.Rptr. 771, 542 P.2d 1363] [writ of mandate appropriate where appellate department's order of summary judgment, absent a motion for summary judgment, deprived party of fair trial].)

[7] "A cache (pronounced 'cash') is a storage mechanism designed to speed up the loading of Internet displays. When a computer user views a webpage, the web browser stores a copy of the page on the computer's hard drive in a folder or directory. That folder is known as the cache, and the individual files within the cache are known as temporary Internet files. When the user later returns to a previously visited webpage, the browser retrieves the cached file to display the webpage instead of retrieving the file from the Internet. By retrieving the page from the cache, instead of the Internet, the browser can display the page more quickly." (Howard, *Don't Cache Out Your Case: Prosecuting Child Pornography Possession Laws Based on Images Located in Temporary Internet Files* (2004) 19 Berkeley Tech. L.J. 1227, 1229–1230, fns. omitted (hereafter Howard).)

graphics, e-mail, Internet history and other basic files from the hard drive. In the course of his examination, he found what he described as "pornography and incest material." Some of the pornographic material depicted obviously young children. Rogers made a copy of the hard drive to document it.

Rogers testified regarding five sexually explicit images of young girls (People's exhibits 2–6) recovered from unallocated cluster space on the hard drive of the home computer. There were six representations of the image in People's exhibit 2 on the hard drive: three thumbnails (a small picture of the main image) and three larger images. In his opinion, the image had appeared on the computer screen three times. People's exhibit 3 contained an image of the same young girl as in People's exhibit 2, taken from a farther distance away. On People's exhibit 6, the image had the words "dark collection 141" embedded on the picture, indicating in Rogers's opinion that it was one of a series of child pornographic pictures downloaded from the Internet.

Rogers also testified regarding a further 30 or so images recovered from the home computer's TIF's. One of these images (People's exhibit 7) included text identifying a specific Web site that offers images of "little" virgins. Other sexually explicit images were surrounded by a frame, again indicating to Rogers that they were part of a series from a child pornography Web site. Similarly, additional recovered images shared common characteristics indicating they were also part of a series of photographs. Some of the images contained references to "Lolita," a common term used to describe underage girls. One image included a banner that read "age14schoolgirls." One of the images was titled "Lola69topless." Another image contained text that included, among others, "daddy's babes," "Lolitas with old men," "young Lolita's shaved," and "exclusive collection incest pics." Another image apparently came from a Web site—which we do not identify by name—that offers to "shock" viewers with images of incest. A couple of the images were repeated on the hard drive, indicating they had come in twice. Many of the images depicted explicit sexual acts between adults and young children. All the images came off Internet Web pages that were viewed on the home computer. Rogers could tell a number of the images were not popups[8] because of their size and format.

Rogers recovered several Web pages from the home computer that had the actual words being used to search the Internet, including incest misspelled "insest,"[9] multiple references to "Lolita" and "underage." He found a search engine—which we do not state by name—that identifies Web sites offering

---

[8] Popups are unrequested images or advertisements that appear on the Web site screen.

[9] Rogers testified it was common in the world of child pornography for key terms to be misspelled or contain numerical replacements for letters to avoid firewalls and filters designed to keep pornography from being delivered to a computer.

images of "monster" "cocks." He noted 51 Web links to sites that appeared from their titles to contain child pornography. Some of the names on the Web searches matched the names on the recovered images from the site.

Rogers found a "cookie" file[10] on the home computer with the file name of "Michael-Tecklenburg@www.theincest[2].txt." The name was taken from the registered user of the computer. It did not necessarily indicate who was sitting at the keyboard at the time it was downloaded.

Rogers found a search engine Web page with a "softcom" banner at the top and the term "insest" placed in the search box. Defendant's e-mail address was at "softcom.net." The e-mail addresses of other family members were not at softcom, but at other services such as "Yahoo!" and "Hotmail."

Rogers recovered a Webcam video showing defendant sitting at the keyboard of the computer.

Rogers testified, however, that there were multiple users of the home computer and that he could not state who accessed the images introduced in the People's exhibits.

San Joaquin County Sheriff's Detective James Hood interviewed defendant on September 14, 2004, about the child pornography located on his home computer. Defendant told Hood he used the home computer and had visited pornographic Web sites, including the one that we have described as offering images of "monster" "cocks." Defendant said there was no child pornography, but according to Hood, defendant seemed concerned. Defendant kept saying that "if it popped up, I couldn't help it." After Hood stopped questioning defendant, defendant made the spontaneous statement: "My life is over."

When Hood went to the Web site identified in defendant's computer as offering images of "little" virgins, he found a free site tour link on the homepage. When he clicked on the site tour, Hood saw a number of images that were the same as found on defendant's home computer. Similarly, when Hood went past the homepage of the Web site that touted sexual talk with "Lolitas," he saw images of the same children pictured on defendant's home computer.

We next set forth the evidence of child pornography found on four computers located in two separate fire departments where defendant worked.

---

[10] Rogers described a cookie file as a file that a Web page downloads to the computer to give the Web site information about the computer user's access and use of the Web site.

*The Three Lodi Fire Department Computers:*

San Joaquin County Sheriff's officers retrieved three computers from station 1 of the Lodi Fire Department, where defendant worked as a fire captain.

The day after defendant spoke with Hood, he spoke with Michael Pretz, the fire chief for the City of Lodi. Defendant told Pretz that he believed there would be something found on the fire department's computer. Defendant said he had viewed pornography on department computers, without specifying which computer specifically. Defendant did not indicate whether the pornography was adult or child pornography.

Nicholas Moreno, Jr., a detective with the San Joaquin County Sheriff's Department assigned to the Sacramento Valley Hi-Tech Crimes Task Force, conducted the forensic analysis of the five computer hard drives received from the Lodi and Clements fire departments.

On the computer taken from the Lodi Fire Department station 1 common area (Lodi common area computer), Moreno found Web sites and pictures similar to what was found on defendant's home computer. When Moreno looked up some of the Web sites, he found they contained very graphic images of young children. On the fire captain's computer taken from the Lodi Fire Department station 1 (Lodi captain's computer), Moreno found images and graphics connected to "incest" and "Lolita." The Lodi captain's computer was available to whoever was assigned the duty of captain. Moreno found nothing of interest on the third computer from the Lodi Fire Department battalion chief's office.

*The Two Clements Fire Department Computers:*

San Joaquin Sheriff's officers retrieved two computers from the Clements Fire Department, where defendant was a volunteer firefighter. Moreno testified the Clements dispatch computer had multiple users, while the Clements chief's computer was located in the chief's locked office. Defendant could have had access to the Clements chief's computer before the current chief took the office and kept it locked.

On the computer taken from the Clements Fire Department dispatch office (Clements dispatch computer), available to all the volunteer firemen in Clements, Moreno found Web sites similar to sites found on defendant's home computer, including Lolita sites and word searches about young girls.

All the child pornography Web sites found on the Lodi Fire Department computers were also on the Clements dispatch computer. Seven sexually explicit images found in unallocated space on the Clements dispatch computer were introduced into evidence (People's exhibits 55–59, 61–62). One of the images (People's exhibit 59) contained the same people shown in one of the images found on defendant's home computer (People's exhibit 33). Moreno found common search terms were used on the Clements dispatch computer and defendant's home computer.

*Additional Overlap of Images and Web Sites Amongst the Computers:*

On the computer taken from the Clements Fire Department chief's computer (Clements chief's computer), Moreno recovered a number of child pornography images and graphics from unallocated space. One of the images was the same as an image found on the Lodi common area computer. Two other duplicate pornographic images were found, indicating they had been accessed more than once.

A specific Web site promoting incest was found in defendant's home computer, the Lodi common area computer, and the Clements chief's computer. An image from that Web site was found on the Clements dispatch computer. Pictures from a Web site touting "Lolitas" were found on the Clements dispatch computer, the Clements chief's computer, and the Lodi common area computer. The specific Web site offering images of "monster" "cocks" was found on the Clements chief's computer and the Lodi common area computer. The Web site contained pictures of teenage boys that led Moreno to think it was a child pornography site. It had the theme of child pornography.

Moreno testified that if a person is looking at child pornography on the Internet, a child pornography popup can appear, but he has never seen child pornography popups in other areas. Hood testified that he had spent 30 to 40 hours going to the sites found on these computers and never experienced a child pornography popup.

*The Defense:*

In defense, defendant's two sons testified that they had looked at pornography sites on the home computer. Defendant's elder son denied seeing any image of child pornography during the time he was searching for pornography. Defendant's younger son said he never purposefully went on the Internet to find very young girls having sex with adult males, but he did remember clicking on "amateur" once and also looking for "little virgins." He did not tell the investigating detective about this when he was interviewed because it

was embarrassing. Both of defendant's sons and one of his daughters testified they experienced a large number of popups on the home computer.

Defendant testified on his own behalf. He admitted looking at adult pornography, but denied ever looking at child pornography. He had concern when officers requested his home computer because he knew there was going to be adult pornography on the computer. When he spoke with Pretz, defendant said he told Pretz he had observed pornography. Defendant said he told Pretz "there's nothing illegal." Defendant testified he was not at home for at least two of the dates connected to material found in the home computer's TIF's. Several defense witnesses corroborated defendant's alibi for those dates. Another one of the Lodi Fire Department captains testified 56 firefighters and some of their children had access to the Lodi common area computer. The Clements Fire Department chief testified 26 firefighters volunteer for the Clements department. Defendant presented his own computer expert witness.

## DISCUSSION

## I.

### There Is Substantial Evidence Defendant Personally Possessed the Child Pornography on the Family Computer

The first question the Supreme Court has directed us to consider is: "(1) Was the evidence sufficient to establish [defendant's] personal possession of the child pornography files on his family's computer?" We conclude it was.

" ' "To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." ' [Citation.] The pertinent inquiry is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.]" (*People v. Romero* (2008) 44 Cal.4th 386, 399 [79 Cal.Rptr.3d 334, 187 P.3d 56].) "If the verdict is supported by substantial evidence, we are bound to give due deference to the trier of fact and not retry the case ourselves. [Citations.] . . . It is the exclusive function of the trier of fact to assess the credibility of witnesses and draw reasonable inferences from the evidence. [Citations.]"

(*People v. Sanchez* (2003) 113 Cal.App.4th 325, 330 [6 Cal.Rptr.3d 271].) Here we are focused on one element of the crime: identity.

Numerous images of child pornography, graphics, and Web site addresses were found on the home computer. Some of the images were found both in thumbnail and normal size. The size and format did not match that of a popup. Some of the images were found multiple times on the hard drive, indicating the images had been accessed multiple times. A number of the images appeared to be part of a series or collection of related child pornography. Some of the images matched images found on a site tour of a child pornography Web site; other images matched images found on another child pornography site after going past the homepage. Evidence was found of multiple Internet word searches for terms commonly connected with child pornography. Some of the word searches matched the names on the recovered images from the Web site.

Thus, the child pornography found on the home computer did not appear to be the result of accidental or mistaken Internet use or involuntary computer popups. Defendant was one of the users of the home computer. He was the registered owner of that computer. This, of course, would not be sufficient alone to show he was the person who had entered the word searches or Web site addresses or accessed the Internet images and graphics found on the home computer. There was, however, more.

Amongst the material found on the home computer was a search engine Web page with a "softcom" banner at the top and the term "insest" placed in the search box. "Insest" misspelled was specifically identified as a way to get child pornography past computer filters and firewalls. Of the family users' e-mail addresses, only defendant's e-mail address was at "softcom.net."

When defendant was interviewed by Hood about the child pornography located on his home computer, defendant told Hood he had visited pornographic sites. One of them that defendant identified by name was the Web site offering images of "monster" "cocks." That Web site was later determined to have a child pornography theme. Moreover, while defendant denied accessing child pornography, defendant kept saying that "if it popped up, I couldn't help it." And after Hood stopped questioning defendant, defendant made the spontaneous statement: "My life is over." A jury could reasonably infer a consciousness of guilt from defendant's statements.

The jury could also have reasonably inferred a consciousness of guilt from defendant's prompt phone call to his boss Pretz alerting him to the fact pornography would be found on the Lodi Fire Department computers. The jury did not have to believe defendant that he assured Pretz it was "nothing illegal."

Then there is the astonishing amount of evidence of similar child pornography found on the Lodi and Clements Fire Department computers. These four computers contained not only Web sites, images, and Internet search terms similar to those on defendant's home computer, but some of the *same* Web sites and at least one image of the *same* children as pictured in one of the defendant's home computer images. All of the child pornography Web sites on the Lodi Fire Department computers were located on the Clements dispatch computer. At least three child pornography Web sites were common to the home computer and computers from Lodi and Clements. Defendant was a fire captain at the Lodi fire station and a volunteer firefighter at Clements.

Defendant makes much of the fact that there were 56 firefighters with access to the Lodi common area computer, and more than 20 firefighters with access to the Clements dispatch computer, that Hood did not interview each of these firefighters, and that Hood did not examine any of the other firefighters' home computers. Defendant apparently would have us believe computer browsing of child pornography is common among firefighters—so much so that it is unreasonable, without forensic examination of the computers of all the other firefighters, to infer from the evidence of child pornography on the fire department computers that it was defendant who was on those computers and his home computer when the child pornography was accessed. We are not persuaded. Viewing the evidence as in a Venn diagram, the fact defendant provided the commonality among all four of these computers reasonably demonstrated that it was defendant who searched the Internet for and accessed the child pornography Web sites and images. Any inadequacy in the investigation of other possibilities went only to the weight of such evidence.

Viewing the totality of the evidence in the light most favorable to the judgment, substantial circumstantial evidence supported the jury's conclusion that defendant was the person who had possessed or controlled the child pornography on the home computer (and the work computers).

## II.

### There Is Substantial Evidence Defendant Knowingly Possessed or Controlled the Child Pornography in the TIF's (Cache)

The second question the Supreme Court has directed us to consider is: "(2) May [defendant] be convicted of possessing child pornography stored in

a computer's cache files absent some evidence that he was aware those files existed? (See *United States v. Kuchinski*[, *supra*,] 469 F.3d 853; *Barton v. State*[, *supra*,] [648] S.E.2d [660], 2007 WL 1775565.)" The Supreme Court's question focuses our attention on a developing area of the law regarding whether a defendant "knowingly possesses" child pornography on a computer when the computer automatically downloads those images into the computer's cache. There is currently no case that has considered the issue under the California statute, section 311.11, subdivision (a). (Cf. *People v. Luera* (2001) 86 Cal.App.4th 513, 523 [103 Cal.Rptr.2d 438] [substantial evidence supported defendant's conviction under § 311.11 as defendant admitted possessing and downloading images of child pornography and showed one of the images on his computer to officers when they asked].)

The Ninth Circuit Court of Appeals most recently considered the issue under the federal child pornography statute in *U.S. v. Kuchinski, supra*, 469 F.3d 853 (*Kuchinski*). Kuchinski pled guilty to possession of child pornography in violation of 18 United States Code section 2252A(a)(5)(B),[11] and admitted forfeiture of his computer equipment under 18 United States Code section 2253. (*Kuchinski, supra*, at p. 856.) He was found guilty after a court trial of receipt of child pornography in violation of 18 United States Code section 2252A(a)(2). Kuchinski admitted his responsibility for the 110 images of child pornography located in his computer's downloaded files and the deleted files in his recycle bin (*Kuchinski, supra*, at p. 856), but contested whether his sentence for receipt and possession of those files could be increased based on thousands of other images located in his computer's active or deleted TIF's. (*Id.* at pp. 861–862.) The Ninth Circuit held it could not. (*Id.* at pp. 862–863.) Distinguishing one of its prior cases (*U.S. v. Romm* (9th Cir. 2006) 455 F.3d 990) as a case where "the defendant knew about the cache files and had actually taken steps to access and delete them" (*Kuchinski, supra*, at p. 862), and a Tenth Circuit case (*U.S. v. Tucker* (10th Cir. 2002) 305 F.3d 1193) as a case where the defendant knew his computer's Web browser was automatically saving the images he viewed in its cache (*Kuchinski, supra*, at pp. 862–863), the Ninth Circuit held that "[w]here a defendant lacks knowledge about the cache files, and concomitantly lacks access to and control over those files, it is not proper to charge him with possession and control of the child pornography images located in those files,

---

[11] Title 18 United States Code section 2252A(a)(5)(B) makes it a federal crime for any person to "knowingly possess[] . . . any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce . . . by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in . . . interstate or foreign commerce by any means, including by computer."

without some other indication of dominion and control over the images. To do so turns abysmal ignorance into knowledge and a less than valetudinarian grasp into dominion and control." (*Id.* at p. 863; see also *U.S. v. Stulock* (8th Cir. 2002) 308 F.3d 922, 925, noting without disagreement that the district court acquitted the defendant of knowing possession of child pornography because "one cannot be guilty of possession for simply having viewed an image on a web site, thereby causing the image to be automatically stored in the browser's cache, without having purposely saved or downloaded the image.")

The Ninth Circuit's position has been followed in Georgia. In *Barton v. State, supra,* 648 S.E.2d 660 (*Barton*), the Court of Appeals of Georgia concluded that the mere accessing and viewing of pornographic materials over the Internet did not constitute the knowing possession of those materials under the relevant Georgia statute[12] absent some evidence the defendant was aware of the storage of them in the computer's TIF's or cache. (648 S.E.2d at pp. 662–663.)

In *Commonwealth v. Gardner* (2007) 72 Va.Cir. 497, the Virginia circuit court expressly agreed with *Kuchinski, supra,* 469 F.3d 853, but denied a motion to dismiss filed by the defendant because the defendant could be found to have known of the images stored in his TIF's or cache based on his statement to law enforcement investigators that " 'I don't have too much.' " (*Commonwealth v. Gardner, supra,* at pp. 497–498.)[13]

The Ninth Circuit view in *Kuchinski, supra,* 469 F.3d 853, is not, however, universally accepted. (*State v. Jensen* (Ct.App. 2008) 217 Ariz. 345, 349–350 [173 P.3d 1046] [notes the division of authority on whether a defendant knowingly possesses child pornography on a computer when the computer automatically downloads those images without the defendant's knowledge, but does not need to decide issue since it finds defendant "received" the images under its statute]; Howard, *supra,* 19 Berkeley Tech. L.J. at pp. 1253–1264 [discussing two conceptual approaches to the issue].)

---

[12] Georgia's statute made it unlawful " 'for any person knowingly to possess or control any material which depicts a minor or a portion of a minor's body engaged in any sexually explicit conduct.' " (Ga. Code Ann. § 16-12-100, subd. (b)(8) (2008), quoted in *Barton, supra,* 648 S.E.2d at p. 661, italics & fn. omitted.) The appellate court in *Barton* noted Barton was not charged with "control" of child pornography under the statute, but only " 'knowing possession' " of the pornography. (*Barton, supra,* at p. 661, fn. 2.) The court specifically did not consider whether Barton's conduct constituted the control of child pornography. (*Ibid.*)

[13] Other cases agree that where there is evidence of a defendant's manually downloading or saving a child pornography image, there is sufficient evidence to establish the defendant's knowing possession. (E.g., *State v. Lindgren* (Ct.App. 2004) 275 Wis.2d 851 [687 N.W.2d 60].)

In *Ward v. State* (Ala.Crim.App. 2007) 994 So.2d 293, the Alabama court adopted a constructive possession approach when evidence showed the defendant " 'reached out' " for and viewed 288 images of child pornography and that he had the ability to copy, print, e-mail or send the images to another computer. (*Id.* at pp. 298–301.)

In *Commonwealth v. Diodoro* (2007) 2007 Pa.Super. 256 [932 A.2d 172] (*Diodoro*),[14] the Pennsylvania statute, similar to section 311.11 here in California, made it a criminal offense for any person to " 'knowingly possess[] **or** control[] any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act . . . .' " (18 Pa. Cons. Stat. Ann. § 6312, subd. (d) (2008), quoted in *Diodoro*, 932 A.2d at p. 173.) The court found the defendant had intentionally sought out and viewed child pornography and thereby controlled the pornography. (*Diodoro, supra*, at pp. 174–175.) "His actions of operating the computer mouse, locating the Web sites, opening the sites, displaying the images on his computer screen, and then closing the sites were affirmative steps and corroborated his interest and intent to exercise influence over, and, thereby, control over the child pornography." (*Id.* at p. 174.) The court noted that "determining whether an individual sought and controlled pornographic images of children recognizes and promotes the purposes behind such statutes; namely, the destruction of the market for the exploitative use of children, *Osborne v. Ohio*, 495 U.S. 103, 109 [109 L.Ed.2d 98, 110 S.Ct. 1691] (1990), and, in turn, the protection of the physical and psychological well-being of children. *New York v. Ferber*, 458 U.S. 747, 756 [73 L.Ed.2d 1113, 102 S.Ct. 3348] (1982)." (*Id.* at p. 174, fn. 4.)

■ With these cases in mind, we turn to the interpretation of our California statute. " 'As in any case involving statutory interpretation, our fundamental task is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] The rules for performing this task are well established. We begin by examining the statutory language, giving it a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language in isolation; rather, we look to the entire substance of the statutes in order to determine their scope and purposes. [Citation.] That is, we construe the words in question in context, keeping in mind the statutes' nature and obvious purposes. [Citation.]" (*People v. Cole* (2006) 38 Cal.4th 964, 974–975 [44 Cal.Rptr.3d 261, 135 P.3d 669].) "If the statutory language

---

[14] We recognize that the Pennsylvania Supreme Court has granted a petition for allowance of appeal in this case. (*Commonwealth v. Diodoro* (Dec. 24, 2007) 595 Pa. 537 [939 A.2d 290].) We use the case to illustrate a different view of the issue.

is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history. [Citation.]" (*Ibid.*)

The operative language of section 311.11, subdivision (a), provides it is a criminal offense for any person to "knowingly possess[] *or* control[] *any matter, representation of information, data, or image, including, but not limited to, any* film, filmstrip, photograph, negative, slide, photocopy, video-tape, video laser disc, computer hardware, computer software, computer floppy disc, data storage media, CD-ROM, or computer-generated equipment or any other *computer-generated image that contains or incorporates in any manner, any film or filmstrip*, the production of which involves the use of a person under the age of 18 years, knowing that the matter depicts a person under the age of 18 years personally engaging in or simulating sexual conduct." (Italics added.)

■ By its plain language section 311.11, subdivision (a), prohibits *either* possession *or* control of any child pornography "matter, representation of information, *data*, or *image*." (§ 311.11, subd. (a), italics added.) The nonexclusive language then broadly describes numerous forms and methods by which such child pornography may be distributed, including not just physical storage devices, but any *"computer-generated image."* (*Ibid.*, italics added.) The statutory language reflects a far-reaching intent by the Legislature to cover both traditional means of displaying child pornography and the new era of Internet use in an effort to reduce the exploitation of children. By its plain terms, section 311.11 includes an image of child pornography as it is displayed on a computer screen as an object that can be knowingly possessed or controlled. Section 311.11, subdivision (a), is not limited to the knowing possession or control of the computer's underlying data or files.

We view, therefore, the language of section 311.11, subdivision (a), as having material differences from the federal child pornography statute at issue in *Kuchinski, supra*, 469 F.3d 853. The federal statute prohibits the knowing possession of "any book, magazine, periodical, film, videotape, computer disk, or any other *material that contains an image* of child pornography." (18 U.S.C.S. § 2252A(a)(5)(B), italics added.)[15] That is, the federal statute does not make it illegal to knowingly possess or control an image of child pornography; only to knowingly possess the material containing the image. In the context of computer child pornography, it is understandable that the

---

[15] We are comparing only the language of 18 United States Code section 2252A(a)(5)(B) at issue in *Kuchinski* to Penal Code section 311.11, subdivision (a). We recognize other portions of the statute prohibit the sale, advertisement, shipping, distribution, receipt, etc., of child pornography. (18 U.S.C.S. § 2252(a).)

federal courts have focused, therefore, on the data stored in the computer's files as that which is illegal under the federal statute to possess. Without knowledge of such files, there can be no "knowing" possession under the federal statute.

Similarly, the Georgia statute, as considered in *Barton, supra*, 648 S.E.2d 660, prohibited possession of " 'any material which depicts a minor or a portion of a minor's body engaged in any sexually explicit conduct.' " (*Id.* at p. 661.)

■    However, the language of section 311.11, subdivision (a), is not so limited. Section 311.11, subdivision (a), makes it directly illegal to knowingly "possess[] or control" any "image" of child pornography.

The evidence here amply supports the jury's conclusion that defendant did knowingly possess or control images of child pornography. The evidence established defendant actively searched for child pornography Web sites, opened such Web sites, went past the homepages, clicked through images on at least one site tour, displayed multiple images of child pornography from the Web sites on his computer screen, in some cases multiple times, and enlarged some of the images from thumbnail views. In our view, the TIF's or cache evidenced defendant's knowing possession or control of the images. There was no need for additional evidence that defendant was aware of the TIF's or cache in order for defendant to have violated section 311.11, subdivision (a).[16]

We wish to be clear. Although a few states have prohibited the viewing of child pornography,[17] we do not interpret section 311.11, subdivision (a), as doing so. We conclude defendant here knowingly possessed or controlled images of child pornography in violation of section 311.11, subdivision (a), because the evidence, viewed in the light favorable to the judgment, demonstrates defendant intentionally used his home and work computers to find, access, and peruse through quantities of child pornography, manipulating the display of such images on his computer screen.

---

[16] Of course, a defendant may also knowingly possess or control child pornography by actively downloading and saving it to his or her computer, by printing it or by e-mailing it. Moreover, a defendant's knowledge or manipulation of TIF's or cache files may provide additional evidence of his or her knowing possession or control of child pornography. We are only saying such knowledge is not an essential predicate for knowing possession and control of computer-generated images of child pornography.

[17] See New Jersey Statutes Annotated section 2C:24-4, subdivision b(5)(b) (2008); Ohio Revised Code Annotated section 2907.323, subdivsion (A)(3) (2008); Arkansas Code Annotated section 5-27-304, subdivision (a)(2) (2008).

## DISPOSITION

Having reviewed the record and finding substantial evidence supports defendant's convictions, we affirm the judgment.

Scotland, P. J., and Davis, J., concurred.

Petitioner's petition for review by the Supreme Court was denied April 1, 2009, S170482.