Filed 1/23/14

# IN THE SUPREME COURT OF CALIFORNIA

|  |  |
|---|---|
| )<br>)<br>In re GARY D. GRANT on Discipline.　) <br>) <br>_____) | S197503 |

In 2009, Gary D. Grant pleaded guilty to felonious possession or control of child pornography. (Pen. Code, § 311.11, subd. (a) (section 311.11(a)); subsequent unlabeled statutory references are to the Penal Code.) The State Bar Court was notified, and a hearing judge determined the conviction involved moral turpitude calling for disbarment. The Review Department concluded, however, that the showing of moral turpitude was not supported by admissible evidence. It recommended that Grant be placed on probation for three years with various conditions, including a two-year period of actual suspension.

The Chief Trial Counsel requested review to determine whether such an offense involves moral turpitude in every case. (See *In re Lesansky* (2001) 25 Cal.4th 11, 16 (*Lesansky*).) We conclude that it does. Accordingly, we reject the Review Department's proposed discipline and disbar Grant from the practice of law.

## I. BACKGROUND

Grant was admitted to practice in 1994. In 2008, he was charged with three counts of knowingly possessing or controlling child pornography. (§ 311.11(a).) On April 8, 2009, Grant pleaded guilty to one felony count, admitting in open

1

court that he "willfully, unlawfully and knowingly possessed images of minors under the age of 18 years old exhibiting their genitals for the purpose of sexual stimulation of the viewer." He was placed on probation for three years with various conditions including service of 90 days in jail and lifetime registration as a sex offender. On May 28, 2009, Grant admitted violating probation after adult pornography was found on his computer. On September 28, 2009, Grant again admitted violating probation when he sent text messages for sexual purposes to former girlfriends. Grant was sentenced to serve a total of 183 days in jail for the two probation violations.

Initiating State Bar (Bar) proceedings, the Chief Trial Counsel sent a record of Grant's conviction to the Review Department. (Rules Proc. of State Bar, rule 5.341.) The Chief Trial Counsel cited Business and Professions Code section 6102, subdivision (c), which mandates summary disbarment following conviction of a felony involving moral turpitude, and urged the Review Department to "find that possession of child pornography involves moral turpitude per se."[1] (Rules Proc. of State Bar, rule 5.343.) The Review Department rejected the request, concluding instead that a violation of section 311.11(a) "is a crime which *may or may not* involve moral turpitude." (Italics added.) Accordingly it referred the matter to the Hearing Department for resolution of the question based on the facts of the case.

During a four-day trial, the Bar prosecutor called Amy Wong, a forensic specialist from the High Technology Crime Unit of the Orange County District

---

[1]     Business and Professions Code section 6102, subdivision (c), requires the summary disbarment of an attorney who is convicted of a felony when "an element of the offense is the specific intent to deceive, defraud, steal, or make or suborn a false statement, or involved moral turpitude."

2

Attorney's Office.  Wong examined items seized from Grant's residence, including three computers and storage media, flagging images of suspected child pornography.  Actual images or videos were not received in evidence, but Wong described a number of them.  One computer contained a peer-to-peer file-sharing program with a video titled "R@ygold Three Russian PreTeens.mpg."  The video showed three girls, two of whom were apparently under 14.  They were nude below the waist and urinating.

Wong also found images of nude or semi-nude girls apparently under 16 as well as evidence that Grant emailed three individuals an image of two nude girls under 16 "touching themselves in the crotch area."  Wong acknowledged on cross-examination that she was "not an expert in identifying the ages of . . . children."  But from approximately 100 images of potential child pornography seized from Grant's residence, she narrowed down the images to those showing girls whose age she was "comfortable" estimating.

Grant testified in his own defense.  He admitted his "sex and love addiction and . . . addiction to Internet pornography."  He obsessively viewed adult pornography online and estimated that he had accumulated more than 300,000 computer images of adult pornography.  He admitted having in his "possession or control" two pornographic images of children, but maintained he did not solicit them.  He explained that when he acquired adult pornography by email, he unknowingly received the images of children as well.  When he saw them, he "found [them] repugnant and instantly deleted [them]."  However, unbeknownst to him, they remained on his computer.  He did not believe these facts constituted "possession."  He pleaded guilty nonetheless because he and his attorney interpreted *Tecklenburg v. Appellate Division* (2009) 169 Cal.App.4th 1402 (*Tecklenburg*) to hold that even the fleeting computer display of an unsolicited image of child pornography violates section 311.11(a).

3

The defense also called numerous character witnesses, including Grant's former colleagues and clients. They opined that Grant was a competent attorney possessed of good character. Grant's conviction did not alter their view.

James Hughes, one of Grant's several therapists, testified Grant suffered from obsessive-compulsive and impulse-control disorders. As a result, he engaged in compulsive "masturbatory activity . . . usually to . . . Internet porn activities." Hughes opined that Grant "was not a chronic child pornography addict," having neither "solicit[ed] . . . [nor] collect[ed] kiddie porn." He admitted on cross-examination, however, that his opinion was based upon Grant's account of having received only two unsolicited images.

The hearing judge rejected Grant's testimony as not credible. He concluded the facts supporting the conviction involved moral turpitude, and recommended disbarment. The judge reasoned that the conviction "involve[d] such a serious breach of a duty owed to another or to society, or such a flagrant disrespect for the law or for societal norms, that knowledge of [Grant's] conduct would be likely to undermine public confidence in and respect for the legal profession," and is, therefore, a conviction of crime involving moral turpitude. (*Lesansky*, *supra*, 25 Cal.4th at p. 16.)

The Review Department reversed, concluding that Wong's testimony was inadmissible as violating the secondary evidence rule (Evid. Code, § 1523, subd. (a)) and involving inadmissible lay opinion (Evid. Code, § 800). The Review Department concluded that the "remaining trial evidence consisted only of Grant's criminal conviction and his concession that he possessed two child pornographic images and twice violated probation." It concluded that although the evidence proved a felony conviction, it was insufficient to establish moral turpitude. The Review Department accordingly rejected the hearing judge's disbarment recommendation and instead recommended to this court that Grant be

4

placed on probation for three years with various conditions, including a two-year period of actual suspension.

The Chief Trial Counsel petitioned for review (Cal. Rules of Court, rule 9.14), urging the possession or control of child pornography is an offense of moral turpitude per se, and that the Review Department should not have ordered a hearing to consider the alleged facts of Grant's claim.[2]

## II. DISCUSSION

Section 311.11(a) makes it a felony for a "person [to] knowingly possess[] or control[] any matter . . . , the production of which involves the use of a person under the age of 18 years, knowing that the matter depicts a person under the age of 18 years personally engaging in or simulating sexual conduct." (§ 311.11(a); *In re Alva* (2004) 33 Cal.4th 254, 262 (*Alva*); see § 311.4, subd. (d) [defining "sexual conduct"].)[3] Bar proceedings concerning convicted attorneys begin in the Review Department. (*In re Paguirigan* (2001) 25 Cal.4th 1, 3, fn. 1; Rules Proc. of State Bar, rule 5.341.) After transmitting a record of the conviction to the Review Department, the Chief Trial Counsel may move for summary disbarment. (Rules Proc. of State Bar, rule 5.343.) If the Review Department determines that the

---

[2] The Chief Trial Counsel argued in the alternative that, even if the offense does not involve moral turpitude in every case, disbarment is nevertheless the appropriate discipline here.

[3] Before November 8, 2006, section 311.11 was a "wobbler," i.e., an offense punishable either as a felony or misdemeanor. The Sexual Predator Punishment and Control Act (Prop. 83, as approved by voters, Gen. Elec. (Nov. 8, 2006)) amended the statute, and describes the crime only as a felony. The section provides for a state prison sentence or a county jail commitment. Ordinarily when an offense is punishable by either a state prison or county jail term, it is a wobbler. (See *People v. Corpuz* (2006) 38 Cal.4th 994, 997.) We need not address this potential anomaly in the statute. Grant was charged with three felonies and pleaded guilty to one of those charges.

5

conviction does not fall within Business and Professions Code section 6102, subdivision (c), it refers the matter to the Hearing Department. (Rules Proc. of State Bar, rule 5.344.) If the conviction *does* meet the criteria, "the [Review Department] must recommend summary disbarment to this court." (*Paguirigan*, at p. 9.) The final decision reposes here. An attorney may petition for review of the recommended discipline (Cal. Rules of Court, rule 9.13, subd. (a)), and nothing in the Business and Professions Code limits our inherent authority in this regard. (*Paguirigan*, at p. 7.)

Grant contends his conviction under section 311.11(a) should not subject him to summary disbarment (Bus. & Prof. Code, § 6102, subd. (c)) because section 311.11(a) does not "involve moral turpitude in every instance."

Whether "[a]n offense *necessarily* involves moral turpitude [because] the conviction would *in every case* evidence bad moral character . . . is a question of law to be determined by this court." (*Lesansky*, *supra*, 25 Cal.4th at p. 16.) Moral turpitude is a concept that "defies exact description" (*In re Mostman* (1989) 47 Cal.3d 725, 736) and "cannot be defined with precision" (*Baker v. State Bar* (1989) 49 Cal.3d 804, 815, fn. 3). We have noted, however, that in attorney discipline cases, moral turpitude should be defined with the aim of protecting the public, promoting confidence in the legal system, and maintaining high professional standards. (*Lesansky*, at p. 16.)

Lesansky was convicted of attempting to commit a lewd act on a child age 14 or 15. (*Lesansky*, *supra*, 25 Cal.4th at p. 13.) We explained that "[c]riminal conduct not committed in the practice of law or against a client reveals moral turpitude if it shows a deficiency in any character trait necessary for the practice of law (such as trustworthiness, honesty, fairness, candor, and fidelity to fiduciary duties) or if it involves such a serious breach of a duty owed to another or to society, or such a flagrant disrespect for the law or for societal norms, that

6

knowledge of the attorney's conduct would be likely to undermine public confidence in and respect for the legal profession. [Citations.]" (*Id.* at p. 16.) *In re Craig* (1938) 12 Cal.2d 93, 97, described moral turpitude as "an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellowmen, or to society in general, contrary to the accepted and customary rule of right and duty." Moreover, we have noted that "[c]onviction of some crimes establishes moral turpitude on its face . . . includ[ing] particular crimes that are extremely repugnant to accepted moral standards such as . . . serious sexual offenses." (*In re Fahey* (1973) 8 Cal.3d 842, 849, citations omitted, citing *In re Boyd* (1957) 48 Cal.2d 69; *In re Duggan* (1976) 17 Cal.3d 416, 423.)

Rather than accept those formulations, Grant relies on *People v. Castro* (1985) 38 Cal.3d 301, 315, in which we described crimes involving moral turpitude as including those that indicate a " 'general readiness to do evil.' " He contends that "violation of section 311.11(a) does not necessarily involve a readiness to do evil." We need not parse that argument. Because *Castro* discussed moral turpitude in the context of using a felony conviction for impeachment, it is of limited relevance in attorney discipline proceedings. As explained in *People v. Armendariz* (1985) 174 Cal.App.3d 674, 682, whether a conviction "reflect[s] upon an attorney's moral fitness to practice law is a far cry from [whether ] . . . such conviction has some relevance . . . on the issue of a witness' credibility." For that reason, a moral turpitude finding in one context is "not determinative on the issue of moral turpitude" in the other. (*People v. Forster* (1994) 29 Cal.App.4th 1746, 1757.)

Section 311.11(a) requires that a defendant "knowingly possess[] or control[] child pornography" (§ 311.11(a)) and know that the pornographic material "depict[s] actual persons, who are actually under 18, engaged in actual or simulated sex acts." (*Alva*, *supra*, 33 Cal.4th at p. 262.) We conclude that such a

crime meets the *Lesansky* formulation in that it is " 'extremely repugnant to accepted moral standards' and necessarily involves moral turpitude for purposes of attorney discipline." (*Lesansky*, *supra*, 25 Cal.4th at p. 17.)

"Child pornography harms and debases the most defenseless of our citizens." (*United States v. Williams* (2008) 553 U.S. 285, 307.) Its production, sale, and distribution are " 'intrinsically related' to the sexual abuse of children in two ways. [Citation.] First, as a permanent record of a child's abuse, the continued circulation itself . . . harm[s] the child who had participated. Like a defamatory statement, each new publication of the speech . . . cause[s] new injury to the child's reputation and emotional well-being. [Citation.] Second, . . . the traffic in child pornography [provides] an economic motive for its production . . . ." (*Ashcroft v. Free Speech Coalition* (2002) 535 U.S. 234, 249 (*Ashcroft*), citing *New York v. Ferber* (1982) 458 U.S. 747, 759-760; *Osborne v. Ohio* (1990) 495 U.S. 103, 109-110 (*Osborne*).) Under either rationale, child pornography is proximately linked to the sexual abuse of children (*Ashcroft*, at p. 250), "*a most serious crime and an act repugnant to the moral instincts of a decent people*" (*id.* at p. 244, italics added.)

Grant does not "dispute that any harm or abuse to a child is serious or that the subject of unlawful images may suffer while an image circulates." He also concedes that "the manufacture or distribution of child pornography likely involves moral turpitude per se." He attempts to distinguish what he terms the "simple possession" of child pornography, however, arguing that it "does not include an intent to harm, offend, or corrupt another; thus, it does not *necessarily* involve moral turpitude." The argument is unpersuasive.

"[T]he 'victimization' of the children . . . does not end when the pornographer's camera is put away. The consumer, or end recipient, of pornographic materials may be considered to be causing the children depicted in

8

those materials to suffer as a result of his actions in at least three ways.  [¶]  *First*, the simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials. . . . The consumer who 'merely' or 'passively' receives or possesses child pornography directly contributes to this continuing victimization.  [¶]  *Second*, . . . [t]he recipient of child pornography obviously perpetuates the existence of the images received, and therefore the recipient may be considered to be invading the privacy of the children depicted, directly victimizing these children.  [¶]  *Third*, the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials. . . . The underlying point . . . is that there is no sense in distinguishing . . . between the producers and the consumers of child pornography.  Neither could exist without the other." (*U.S. v. Norris* (5th Cir. 1998) 159 F.3d 926, 929-930, citations omitted; *Osborne*, *supra*, 495 U.S. at pp. 109-111; see *People v. Cantrell* (1992) 7 Cal.App.4th 523, 540 [section 311.11 "aimed at extinguishing the market for sexually explicit materials featuring children"].)

In arguing that the knowing possession or control of child pornography does not necessarily involve moral turpitude, Grant posits "two scenarios wherein a person could be convicted under section 311.11(a) and the individual's conduct would not evidence bad moral character."  Neither example advances his argument.

First, Grant contends that the possession of a pornographic image "depict[ing] an individual on the cusp of majority" would not evidence bad moral character.  He reasons that, in such a situation, "possession of an image may be unlawful, but the image in and of itself may not be patently offensive (as images of pre-pubescent minors may be)."  This argument relies on a First Amendment obscenity inquiry:  Whether material "appeals to the prurient interest [and] is

9

patently offensive in light of community standards." (*Ashcroft*, *supra*, 535 U.S. at p. 246.) Grant conflates that question with the issue at hand: Whether the possession of pornographic images depicting a person under 18 necessarily involves moral turpitude.

Before 1994, section 311.11 applied to matter involving children under 14; the Legislature subsequently amended the statute to cover those under 18. (*People v. Woodward* (2004) 116 Cal.App.4th 821, 839.) The Legislature did so to better address the sexual exploitation of children. (Assem. Com. on Pub. Safety, analysis of Assem. Bill No. 927 (1993-1994 Reg. Sess.) as amended Jan. 3, 1994, p. 2.) The amendment reflects the Legislature's view that whether the pornography involves a child age 11 or 17, its possession is proximately linked to the sexual abuse of a child. Moreover, under section 290, *all* those convicted of this offense are required to register for life as sex offenders. That enactment constitutes an articulation by the Legislature that this behavior is so repugnant to accepted societal standards as to constitute morally turpitudinous behavior per se.

Second, Grant contends that "a person [who] unknowingly come[s] into possession of an unlawful image" can be convicted under section 311.11(a), even if he or she immediately disposes of the images. Under such circumstances he argues that "person's conduct would not inherently involve moral turpitude." Indeed, this is what Grant claims happened here. We note that his testimony was explicitly rejected as unbelievable by the hearing judge. Furthermore, the concern that section 311.11(a) covers a person who innocently receives unsolicited material, discovers it contains child pornography, and immediately destroys the material or reports it to law enforcement is unfounded. We held in *People v. Mijares* (1971) 6 Cal.3d 415, 417, that "the act of handling a narcotic for the sole purpose of disposal" does not constitute possession. *People v. Hurtado* (1996) 47 Cal.App.4th 805, 814, established that a felon's momentary control of a firearm

for purpose of disposal or self-protection is a defense to possession charges. Applying these "momentary possession" holdings to this context is consistent with the case law of other jurisdictions. (*Fabiano v. Armstrong* (Colo. Ct.App. 2006) 141 P.3d 907, 909 ["receipt of an unsolicited e-mail containing previously unknown material that is immediately deleted from the receiver's computer may not constitute possession of the material in the e-mail"]; see 18 U.S.C. § 2252(c)(2) [taking prompt steps to destroy pornographic images of children or to report them to law enforcement is an affirmative defense to federal possession charges].) Additionally, Grant's attempt to recast his behavior is inconsistent with his guilty plea. His signed plea form admits willful, unlawful, and knowing possession.

Grant tries to distance himself from his plea by relying on *Tecklenburg*. That reliance is misplaced. The narrow question of law presented in *that* case was whether Tecklenburg could be convicted of knowingly possessing pornographic images of children contained in his computer's temporary Internet files (TIFs) without evidence he knew that the images had been stored there. (*Tecklenburg*, *supra*, 169 Cal.App.4th at pp. 1414-1415.) Section 311.11(a) broadly prohibits the possession *or* control of child pornography. As one witness explained at trial, the existence of such images in the TIFs meant that, at some point, the images appeared on the computer screen. (*Tecklenburg*, at p. 1407.) The court noted that, although evidence that a defendant *knew* the images had been stored or had actively manipulated them could be used to prove knowing possession or control, such evidence was not essential. (*Id*. at p. 1419, fn. 16.) The court explained that "[t]he evidence established defendant actively searched for child pornography Web sites, opened such Web sites, went past the homepages, clicked through images on at least one site tour, displayed multiple images of child pornography from the Web sites on his computer screen, in some cases multiple times, and

11

enlarged some of the images from thumbnail views." (*Id.* at p. 1419.)
*Tecklenburg* is manifestly distinguishable. It cannot reasonably be read as
suggesting that someone who receives an unsolicited email containing unknown
material, opens the email, and immediately deletes the material upon viewing it
can be convicted under section 311.11(a) on that basis alone. Indeed, *Tecklenburg*
expressly concluded that the statute did not prohibit the mere viewing of child
pornography (*Tecklenburg*, at p. 1419), and pointed out the defendant's possession
of "the child pornography . . . did not appear to be the result of accidental or
mistaken Internet use . . . ." (*id.* at p. 1413). Grant makes no attempt to show he
sought judicial interpretation of section 311.11(a), informed the trial court he was
pleading under the compulsion of *Tecklenburg'*s alleged holding, or sought to
enter a plea that might be put aside on appeal because *Tecklenburg* allegedly read
the statute too broadly. Nor has he ever moved to have his plea set aside.

Thus, neither of Grant's scenarios undermines our conclusion that the
knowing possession or control of child pornography involves moral turpitude in
every case. Moreover, our holding is consistent with other state and federal
decisions. In *Iowa Supreme Court Attorney Disciplinary Board v. Blazek* (Iowa
2007) 739 N.W.2d 67, 69, the Iowa Supreme Court disbarred an attorney after
concluding that the possession of child pornography is " 'an act of baseness,
vileness or depravity in the duties which one person owes to another or to society
in general' " constituting moral turpitude. In *U.S. v. Santacruz* (9th Cir. 2009) 563
F.3d 894, 895, the Ninth Circuit concluded that the possession of child
pornography is a crime of moral turpitude. *Nunez v. Holder* (9th Cir. 2010) 594
F.3d 1124, 1132, described the knowing possession of child pornography as
"categorically [a] crime[] of moral turpitude." Although *Santacruz* and *Nunez*
arose in the immigration context, the Ninth Circuit applied the standard of moral
turpitude as involving a crime that was " 'vile, base or depraved and . . . violates

12

societal moral standards.' " (*Santacruz*, at p. 896; see *Nunez*, at p. 1131.) That formulation is substantially similar to those we have employed in attorney disciplinary proceedings. (See, e.g., *In re Fahey*, *supra*, 8 Cal.3d at p. 849; *In re Craig*, *supra*, 12 Cal.2d at p. 97.)[4]

The question presented here is a narrow one. Our resolution does not turn on the evidentiary determinations raised in the Bar hearing or review process. We express no opinion on the evidentiary admissibility or sufficiency questions. Grant pleaded guilty to the felony of *knowingly* possessing *child* pornography. His guilty plea establishes those facts as a matter of law. The only question here is whether that crime, as admitted by him, constitutes moral turpitude per se. It does. The knowing possession of child pornography is "a serious breach of the duties of respect and care that all adults owe to all children, and it show[s] such a flagrant disrespect for the law and for societal norms, that continuation of [*a convicted attorney's*] State Bar membership would be likely to undermine public confidence in and respect for the legal profession." (*Lesansky*, *supra*, 25 Cal.4th at p. 17.)

---

[4]   At oral argument, the parties discussed a hypothetical situation in which a defendant possessed the sexually explicit photo of a minor close to the defendant's age, with whom the defendant had a relationship, and who created and transmitted the image to the defendant. Of course, a prosecutor would retain discretion over whether or not to bring any charges based on such hypothetical facts. Even if charges were brought and the defendant convicted, however, he or she could petition here for review of a disbarment recommendation. (Cal. Rules of Court, rule 9.13(a).) Moreover, such an individual could petition for a certificate of rehabilitation (§ 4852.01 et seq.), move to expunge the conviction (§ 1203.4), and petition to reinstate his or her Bar membership (Rules Proc. of State Bar, rule 5.440).

III. DISPOSITION

It is hereby ordered that Gary D. Grant be disbarred from the practice of law and that his name be stricken from the roll of attorneys. Costs are awarded to the State Bar.

**CORRIGAN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**KENNARD, J.**
**BAXTER, J.**
**WERDEGAR, J.**
**CHIN, J.**
**LIU, J.**

14

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** In re Grant

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding** XXX
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S197503
**Date Filed:** January 23, 2014

_____

**Court:**
**County:**
**Judge:**

_____

**Counsel:**

Starr Babcock, Richard J. Zanassi, Mark Torres-Gil, Kimberly Anderson and Margaret Warren for Petitioner Chief Trial Counsel of the State Bar of California.

Gary D. Grant, in pro. per.; Law Offices of Michael G. York and Michael G. York, for Respondent Gary D. Grant.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Mark Torres-Gil
The State Bar of California
180 Howard Street
San Francisco, CA  94105
(415) 538-2012

Michael G. York
Law Offices of Michael G. York
1301 Dove Street, Suite 1000
Newport Beach, CA  92660-2416
(949) 833-8848