Filed 8/31/22  P. v. Armas CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANTONIO GERMAN ARMAS,<br><br>    Defendant and Appellant. | D079728<br><br><br>(Super. Ct. No. FWV18003945) |

APPEAL from an order of the Superior Court of San Bernardino County, Katrina West, Judge.  Affirmed.

Rob Bonta, Attorney General, Charles C. Ragland, Senior Assistant Attorney General, Arlene A. Sevidal and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

Wallin & Klarich and Stephen D. Klarich for Defendant and Appellant.


Antonio German Armas appeals the order placing him on probation for two years after a jury found him guilty of possession and distribution of child pornography.  He claims the evidence was insufficient to support the verdicts, the trial court prejudicially erred by failing to instruct the jury on momentary

possession and unanimity, and the cumulative effect of these errors deprived him of a fair trial.  We disagree and affirm the order.[1]

I.

BACKGROUND

A.    *Charges*

The People charged Armas with one count of distributing child pornography (Pen. Code, § 311.1, subd. (a); undesignated section references are to this code) and one count of possessing child pornography (§ 311.11, subd. (a)).  Armas pled not guilty and demanded a jury trial.

B.    *Prosecution Case*

The People called several employees of the Police Department of the City of Fontana (the Department) to testify at trial.

1.    *Jeremy Hale*

In 2018, Jeremy Hale was the supervisor of the Department's task force that investigated Internet crimes against children.  He targeted the use of peer-to-peer computer networks, which allow Internet users to share electronic files, including movies and images.  Such sharing reduces download times because a user may download portions of the same file from multiple other users simultaneously.  Hale explained that a peer-to-peer network user must install a certain type of software (e.g., eMule, eDonkey, or Gnutella) on his computer to access the network.  During the installation, the user must select whether or not to allow sharing of files with other network users.  The software allows the user to search the network for particular content by inputting the title of a file or search terms.  When the user finds

---

[1]    The order granting probation, though technically not a judgment because it imposed no sentence (*People v. McKenzie* (2020) 9 Cal.5th 40, 46; *People v. Karaman* (1992) 4 Cal.4th 335, 344, fn. 9), is deemed to be a final judgment for purposes of appeal (Pen. Code, § 1237, subd. (a)).

what he is looking for, he may download the file onto his computer and view it.

In April of 2018, Hale launched an investigation into online child pornography activity in San Bernardino County. Using a computer program developed by law enforcement to track the sharing of child pornography on peer-to-peer networks, a database of secure hash algorithms (SHAs)[2] each of which is unique to an Internet file known to contain child pornography, and search terms common in files containing child pornography, Hale initiated a search for child pornography. A computer with an Internet protocol (IP) address later determined to belong to Armas's residence responded to the search. Hale was able to download one complete video called "tropical cuties" and five partial videos. The "tropical cuties" video showed a girl between the ages of 10 and 12 years masturbating, performing fellatio, and engaging in group sexual intercourse. The partial videos had SHAs of known child pornography.

On cross-examination, Hale acknowledged an IP address does not identify the specific person using a computer at that address, and it is possible for one person to hack into another person's wireless Internet network and use the other's IP address. Hale also acknowledged it is possible for a peer-to-peer network user unknowingly to download child pornography by searching for something else if a search term happens to be in the title given to a file containing child pornography.

---

[2] "A hash value is like a DNA signature for a digital file; it is statistically unique and never changes, so it provides a way to authenticate that two digital files are identical, even if the names are different." (*People v. Lund* (2021) 64 Cal.App.5th 1119, 1125.)

2.    *Marcia Pineda*

Marcia Pineda was a detective who investigated Internet crimes against children for the Department in 2018.  On October 24 of that year, she executed a search warrant at Armas's residence and found in the living room a desktop computer that was powered on.  The eMule program was running and actively sharing content with other computers on the peer-to-peer network.  Pineda turned off the firewall and attached a device that allowed her to search the computer's hard drive.  The device found several files with terms commonly used for child pornography, including "16-year-old pu**y series cute Lolita f**ked PTHC [preteen hardcore] stickhim hot underage teen girl," "Russian teen Yana," and "14-year-old while shame."  Pineda seized the computer and took it to the police station for forensic analysis.

3.    *Brandon Canary*

Brandon Canary worked as a computer forensics technician for the Department in 2018.  He performed a full forensic analysis of the computer Pineda had seized from Armas's residence.  Canary searched the computer for terms commonly used in the names of files containing child pornography and found "hundreds of them."  More than 30 such files had been opened and viewed on media players, and some had been recently accessed.  These files were accessed from user-created folder "C:users/Tony/downloads/eMule/junk" or "C:users/Tony/downloads/eMule/incoming."  The viewed files included, among others, "tropical cuties" and "PTHC 14yo immature Asian girl anal plus Blowjob 12yo 11yo 13yo anal PTSC cum shot Lolita 2012 preteen webcam_Xvid.avi."  In the eMule program, Canary found more than 50 files, approximately 20 of which had been shared with other users.  For example, on October 6, 2018, a file named "Pedo asian kid box Thai lolita young pretty girl 13yo sweet make love.mpg" was requested 94 times, and 17 of the

requests were granted.  On the same day, a file named "PTHC 10y Petite Thai Preteen Blowjob plus Pu\*\*y F\*\*k Plus cream Pie Rare OPVA KLVN 090904 2014 kids Asian 9y 11y 12y 13y converted.mov" was requested eight times, and five of the requests were granted.  Other files with similarly obscene names were shared earlier and later in the same month.  The Internet search history of the computer listed more than 25 file names with terms commonly used for child pornography, including the "tropical cuties" video Hale had downloaded from Armas's computer.

Canary also examined the computer seized from Armas's residence to determine whether it contained any child pornography in the "unallocated space," to which deleted files would have been moved whenever the recycle bin was emptied.  He found four images:  (1) three naked preteen girls; (2) two naked preteen boys touching each other; (3) a naked girl on a bed; and (4) a toddler's vagina with a large hand on it.  Canary found no similar images in the allocated space of the computer; that space contained the file names that had been searched for, downloaded, and shared, as mentioned above, but no actual files.  According to Canary, computer programs can "wipe out unallocated space" to prevent recovery of files that had been deleted and sent there.

When cross-examined, Canary conceded a person inadvertently could download child pornography onto a computer by downloading a file the person did not know contained such material.  He similarly conceded a peer-to-peer network user who unknowingly had child pornography on his computer could share the material with another user who requested it.  Canary admitted he could not tell from his forensic examination what specific portion of a file was shared; he could tell only that the file had an SHA known for child pornography and that some portion of the file had been shared.

5

Canary did not know whether any of the four images he found in the unallocated space had been shared. He did not find on the computer any programs that permanently delete files, but "did not go deep into looking for those."

       4.     *Vanessa Waggoner*

Vanessa Waggoner was another member of the Department's task force on Internet crimes against children in 2018. She read Armas his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 and then interviewed him after his computer had been seized. Armas said the computer was his and his wife also had access to it. He told Waggoner he had been using a peer-to-peer file sharing program for four to five years to access music, movies, and adult pornography. When looking for pornography, Armas used such search terms as "gorgeous," "nice butt," "petite teen," and "cute." He selected files from the search results and downloaded them. Armas said he never purposefully downloaded any child pornography, but he eventually became aware some of the downloaded files contained child pornography. He said he viewed the files, and if they contained child pornography, he deleted them or moved them to his designated "junk" folder.

C.    *Defense Case*

Armas did not testify at trial and called only one witness, digital forensics expert Ernest Koeberlein. Koeberlein analyzed the hard drive of Armas's computer and found "a lot" of adult pornography but no child pornography. Koeberlein found complete and partial file names for child pornography but no actual files. He found evidence that files were shared from the computer but no evidence the shared files contained child pornography. Koeberlein found no programs that could permanently delete files. On cross-examination, Koeberlein stated he did 10 hours of forensic

6

analysis on Armas's computer. He admitted he did not specifically examine the recent play lists of the media players, the most recent uploads folder, the Internet search history, or the unallocated space to determine whether they contained titles or words commonly associated with child pornography

D.    *Verdicts and Sentencing*

The jury found Armas guilty on both counts. The trial court suspended imposition of sentence and placed Armas on probation for two years.

II.

DISCUSSION

A.    *Sufficiency of the Evidence*

Armas contends the evidence was insufficient to establish he knowingly possessed or controlled child pornography as required for conviction of both offenses. As to distribution, Armas argues there was no evidence he was using the computer when the "tropical cuties" video and portions of other videos were sent to Hale, none of the videos was found on the computer, and software that could have deleted the videos was not installed on the computer. As to possession, Armas argues the only pornographic images of children found on the computer were in the unallocated space to which deleted matters were consigned, and there was no evidence such images were searched for, saved, repeatedly accessed, or obliterated.[3] The People respond

---

[3]    Armas also contends any possession of child pornography was so fleeting that it qualifies for the defense of momentary possession and renders the People's evidence insufficient to support the convictions. As we explain as part of our discussion of Armas's related claim that the trial court prejudicially erred by failing to instruct the jury on the momentary possession defense, however, there was no substantial evidence to support the defense. (See part II.B.1, *post*.) Moreover, even if there were such evidence, as we discuss in the text below there was substantial evidence from which the jury could conclude Armas possessed child pornography more than momentarily, and actually saved and viewed it on his computer and shared it

7

they presented substantial evidence from which the jury could conclude Armas actively sought out and viewed child pornography by using his computer and shared what he found with others over his peer-to-peer computer network. The People are correct.

In considering a challenge to the sufficiency of the evidence to support a judgment of conviction, we review the whole record in the light most favorable to the judgment to determine whether it contains substantial evidence (i.e., evidence that is reasonable, credible, and of solid value) from which a rational jury could find the elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319; *People v. Johnson* (1980) 26 Cal.3d 557, 578; *People v. Mendoza* (2015) 240 Cal.App.4th 72, 85.) We resolve in favor of the judgment all conflicts in the evidence and all inferences that reasonably may be drawn from the evidence. (*Jackson*, at p. 319; *Tecklenburg v. Appellate Division* (2009) 169 Cal.App.4th 1402, 1412 (*Tecklenburg*).) We do not weigh the evidence or assess witness credibility. (*People v. Navarro* (2021) 12 Cal.5th 285, 302; *People v. Petrovic* (2014) 224 Cal.App.4th 1510, 1517 (*Petrovic*).) As we explain below, under this deferential standard of review the jury's guilty verdicts must be upheld.

We first consider the conviction of distributing child pornography. To obtain that conviction, the People had to prove Armas knowingly transferred to someone else possession of matter that he knew depicted a minor personally engaged in sexual conduct. (§§ 311, subd. (d), 311.1, subd. (a).) One way to violate section 311.1, subdivision (a) is for a user of a peer-to-peer computer network to share an electronic file known to contain child

---

with others. Since we must view the evidence in the light most favorable to the judgment, we reject Armas's contention his possession of child pornography was only momentary and thus insufficient to support the convictions.

pornography with another network user. (*People v. Wimer* (2022) 74 Cal.App.5th 113, 136 (*Wimer*).) The People introduced evidence of this type of violation at trial. Armas told Waggoner that the computer seized from his residence was his, that he shared computer files on a peer-to-peer network, that he searched for adult pornography by using terms such as "petite teen" and "cute," and that he was aware some of the files he downloaded contained child pornography. Canary testified he found the "tropical cuties" file name and other child pornography file names in the Internet search history of the computer; and in the peer-to-peer network sharing program (eMule), he found more than 50 file names of known child pornography, many of which had been accessed from folders containing "Tony" and "eMule" in their names, viewed on the media players installed on the computer, and uploaded to other network users. Hale testified that during his investigation of online child pornography activity, he accessed the peer-to-peer network and downloaded from a computer with an IP address belonging to Armas the "tropical cuties" video, which depicted a 10- to 12-year old girl engaging in sex acts. From this testimony, the jury reasonably could conclude Armas knowingly used his computer to search for, download, and view child pornography files and knowingly transferred possession of such files to other users over his peer-to-peer network. (See § 311, subd. (e) [" 'Knowingly' means being aware of the character of the matter"]; *People v. Kuhns* (1976) 61 Cal.App.3d 735, 756 [statute prohibits " ' "not innocent but *calculated purveyance* of filth" ' "].)

We next consider the conviction of possessing child pornography. To obtain that conviction, the People had to prove Armas knowingly possessed or controlled matter he knew depicted a minor personally engaged in sexual conduct. (§ 311.11, subd. (a).) Among the ways the People could do so were

9

to prove that Armas intentionally sought out child pornography on the Internet and made it appear on his computer screen (*Petrovic, supra*, 224 Cal.App.4th at pp. 1516-1517) or that he actively downloaded child pornography and saved it to his computer (*Tecklenburg, supra*, 169 Cal.App.4th at p. 1419, fn. 16).  As discussed above in connection with the distribution conviction, Canary testified the Internet search history of Armas's computer listed multiple file names with terms commonly used in child pornography files, and Armas told Waggoner he searched for pornography using such terms as "petite teen" and "cute" and downloaded files that he became aware contained child pornography.  Canary also testified he found in the unallocated space of the computer four images of naked minors, including one of two preteen boys touching each other and another of a large hand touching a toddler's vagina, which Armas concedes qualify as depictions of minors engaged in sexual conduct.  (See § 311.4, subd. (d)(1) [defining "sexual conduct" to include masturbation, exhibition of genitals for purpose of sexual stimulation of viewer, and any lewd or lascivious sexual act under § 288].)  From this evidence, the jury reasonably could conclude Armas knowingly possessed the images by searching for, downloading, viewing, and then deleting them.  (See *Petrovic*, at p. 1516 [" ' "intentionally seeking out child pornography and purposefully making it appear on the computer screen—for however long the defendant elects to view the image—itself constitutes knowing control" ' "].)

Armas argues, however, the possibility of hacking, the location of child pornography only in unallocated space on his computer, and the lack of any evidence he used software to erase child pornography make the People's evidence "too thin" to prove he deliberately accessed and intentionally distributed child pornography as required to support the convictions.  Armas

10

contrasts the evidence in this case with that in *Tecklenburg, supra*, 169 Cal.App.4th 1402, where "[t]he evidence established defendant actively searched for child pornography Web sites, opened such Web sites, went past the home pages, clicked through images on at least one site tour, displayed multiple images of child pornography from the Web sites on his computer screen, in some cases multiple times, and enlarged some of the images from thumbnail views." (*Id.* at p. 1419.) Armas contends that without evidence like that presented in *Tecklenburg*, the jury's guilty verdicts in this case cannot stand. We disagree.

The possibility of hacking does not undermine the jury's verdicts. Although Hale testified that someone who hacked into another person's Internet network could use that person's IP address, there was no evidence anyone had ever hacked into Armas's network or used his IP address. A jury may not base a verdict on mere possibility, suspicion, or speculation. (*People v. Grant* (2020) 57 Cal.App.5th 323, 330; *People v. Stanford* (1959) 176 Cal.App.2d 388, 392.) The discovery of child pornography only in the unallocated space of Armas's computer also does not undermine the verdicts. "Data or images found in unallocated space on a hard drive may . . . result from deleted, saved or downloaded files or come in various ways from [temporary Internet files]. There is often no way to determine the original source, but it can be said that at some point it was on the computer screen." (*Tecklenburg, supra*, 169 Cal.App.4th at p. 1407.) Given the evidence of Internet searches for child pornography, its discovery in the unallocated space "evidenced [Armas's] knowing possession or control of the images." (*Id.* at p. 1419.) The People did not also have to prove Armas " 'had the ability to access, view, manipulate or modify' the images that were on his computer" when Pineda seized it. (*People v. Mahoney* (2013) 220 Cal.App.4th 781, 795

11

(*Mahoney*).)  Nor is it of any significance that Canary and Koeberlein found no program capable of permanently deleting files on Armas's computer. Although the existence of such a program could explain why child pornography file names were found on the computer but actual files were not, the absence of such a program does not prove the files were never there or that Armas did not delete them.  Canary's testimony he found child pornography file names in multiple locations on the computer, including the Internet search history, folders with "Tony" and "eMule" in their names, the eMule program, and the media players, constitutes circumstantial evidence Armas downloaded and viewed the files and later deleted them. "[C]ircumstantial evidence is as sufficient as direct evidence to support a conviction."  (*People v. Bloom* (1989) 48 Cal.3d 1194, 1208.)

We are also unpersuaded by Armas's argument the evidence against him falls short of that found sufficient in *Tecklenburg*, *supra*, 169 Cal.App.4th 1402.  "When we decide issues of sufficiency of evidence, comparison with other cases is of limited utility, since each case necessarily depends on its own facts."  (*People v. Thomas* (1992) 2 Cal.4th 489, 516.)  We do note, however, that although there was no evidence in this case that Armas "intentionally used his home and work computers to find, access, and peruse through quantities of child pornography, manipulating the display of such images on his computer screen" (*Tecklenburg*, at p. 1419), there was evidence, albeit largely circumstantial, that he "actively searched for child pornography" on his home computer, "displayed multiple images of child pornography from [the Internet] on his computer screen" (*ibid.*), and shared child pornography files with other peer-to-peer computer network users. "Comparison of the evidence in this case with that in [*Tecklenburg*], for

12

whatever such a comparison is worth, thus fails to reveal any deficiency of proof warranting reversal." (*Thomas*, at p. 516.)

B.    *Instructional Errors*

Armas raises two claims of prejudicial instructional error:  (1) failure to instruct the jury on the defense of momentary possession (CALCRIM No. 2305); and (2) failure to give the jury a unanimity instruction (CALCRIM No. 3500).  The People respond that the evidence did not warrant giving the instructions and, alternatively, that the failure to give them was harmless. We review these claims of error de novo (*People v. Guiuan* (1998) 18 Cal.4th 558, 569; *People v. Russell* (2006) 144 Cal.App.4th 1415, 1424) and find no prejudicial instructional error.

1.    *Momentary Possession*

The affirmative defense of momentary possession was first recognized by the Supreme Court of California in *People v. Mijares* (1971) 6 Cal.3d 415. There, the Supreme Court held a person who threw heroin out of a car and "maintained momentary possession for the sole purpose of putting an end to the unlawful possession of [another]" was not guilty of unlawful possession of narcotics.  (*Id.* at p. 420.)  The Supreme Court later clarified the defense applies only to " 'a fleeting, de minimis possession and a reflexive act of abandonment.' "  (*People v. Martin* (2001) 25 Cal.4th 1180, 1191 (*Martin*); see CALCRIM No. 2305 [defense applies when defendant possessed controlled substance "only for a momentary or transitory period" and "in order to (abandon[,]/ [or] dispose of[,]/ [or] destroy) it"].)  The Supreme Court has stated in dictum that against a charge of possession of child pornography the defense would be available to "a person who innocently receives unsolicited material, discovers it contains child pornography, and *immediately* destroys

13

the material or reports it to law enforcement." (*In re Grant* (2014) 58 Cal.4th 469, 479, italics added.)

The trial court had no duty to instruct on the momentary possession defense in this case. A court must instruct the jury on a defense if the defendant relies on it at trial or if substantial evidence supports the defense and it is not inconsistent with the defendant's theory of the case. (*People v. Molano* (2019) 7 Cal.5th 620, 667; *People v. Maury* (2003) 30 Cal.4th 342, 424.) Armas did not invoke the momentary possession defense at trial, and there was no substantial evidence from which a reasonable jury could conclude he possessed child pornography only very briefly for the purpose of getting rid of it. Waggoner testified that when she interviewed Armas, he told her that he used the peer-to-peer software to search for adult pornography, and when he opened and viewed the search results and realized some contained child pornography, he deleted them or moved them to his "junk" folder. Canary testified he found evidence child pornography videos had been played on the computer but found no actual videos, and he found four images of child pornography in unallocated space on Armas's computer, where deleted items were moved when the recycle bin was emptied. Thus, there was evidence Armas downloaded and deleted items of child pornography on his computer, but, critically, there was no evidence on how soon after downloading the items he deleted them. The deletions might have been immediate, or they might have been days, weeks, months, or years later. Without evidence the deletions were immediate, the defense was not available. (*In re Grant, supra,* 58 Cal.4th at p. 479; see *Martin, supra,* 25 Cal.4th at pp. 1192-1193 [defense inapplicable to possession of methamphetamine for four hours]; *People v. Sullivan* (1989) 215 Cal.App.3d 1446, 1449, 1453 [same as to possession during drive from home to dumpster

14

in industrial park].)  The trial court thus had no duty to instruct the jury on momentary possession.  (See *People v. Memro* (1995) 11 Cal.4th 786, 868 [party not entitled to instruction on theory with no supporting evidence]; *People v. Wilson* (1992) 3 Cal.4th 926, 942 [speculation insufficient to require instruction by court].)

    2.    *Unanimity*

A defendant has a federal and state constitutional right to a unanimous jury verdict in a criminal case.  (U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, § 16; *Ramos v. Louisiana* (2020) 590 U.S. ___, ___ [140 S.Ct. 1390, 1397]; *People v. Russo* (2001) 25 Cal.4th 1124, 1132.)  This right requires all jurors to agree the defendant committed the same specific crime before they return a guilty verdict.  (*Russo*, at p. 1132; *People v. Norman* (2007) 157 Cal.App.4th 460, 464.)  When a conviction on a single count could be based on more than one discrete criminal act shown by the evidence, the People must select the act on which they are relying or the trial court must instruct the jurors that to return a guilty verdict they must all agree the defendant committed the same act.  (*People v. Jennings* (2010) 50 Cal.4th 616, 679; *People v. Sorden* (2021) 65 Cal.App.5th 582, 614-615 (*Sorden*); see CALCRIM No. 3500.)  The instruction is intended to eliminate the danger that jurors will amalgamate evidence of multiple crimes to conclude the defendant must have done something wrong and return a guilty verdict even though there is no single crime all jurors agree the defendant committed.  (*People v. Sutherland* (1993) 17 Cal.App.4th 602, 612; *People v. Deletto* (1983) 147 Cal.App.3d 458, 472 (*Deletto*).)

The trial court was not required to give a unanimity instruction on the charge of possession of child pornography (§ 311.11, subd. (a)), because the People did not present more than one discrete offense to the jury.

15

Simultaneous possession of multiple items of child pornography at the same location is chargeable as only one offense under section 311.11, subdivision (a). (*People v. Manfredi* (2008) 169 Cal.App.4th 622, 624; *People v. Hertzig* (2007) 156 Cal.App.4th 398, 403.) The People charged Armas with only one count of possession of child pornography, and the possession alleged was on the date his computer was seized. The evidence at trial showed the only place where child pornography existed on that date was the unallocated space of Armas's home desktop computer. The People argued to the jury that even though individual items might have been downloaded on other dates, Armas was guilty because he still possessed them on the date his computer was seized. Since the People's theory was that Armas violated section 311.11, subdivision (a) by possessing *all* the child pornography images on that date, there was no reason for jurors to treat any one image differently from the others and no need to direct them to choose and agree upon possession of a particular image as the basis for conviction. (*Mahoney*, *supra*, 220 Cal.App.4th at p. 796; cf. *People v. Sample* (2011) 200 Cal.App.4th 1253, 1259 [possession of child pornography at two different times in two separate locations supported two convictions].) And since evidence of only one chargeable possession offense was presented to the jury, there was no danger the jury would amalgamate evidence of multiple offenses and conclude Armas must be guilty of something. (*Deletto*, *supra*, 147 Cal.App.3d at p. 472.) Given the way the possession count was charged and presented to the jury, no unanimity instruction was required. (*Mahoney*, at p. 796.)

The trial court should have given a unanimity instruction on the charge of distribution of child pornography (§ 311.1, subd. (a)), however, because the evidence showed multiple discrete offenses. Each download from Armas's computer of a different child pornography file by a peer-to-peer network user

constitutes a separate violation of the statute. (*Wimer, supra*, 74 Cal.App.5th at pp. 136-139.) The People charged Armas with only one count of distribution of child pornography and alleged the distribution occurred over a period of several months. At trial they presented evidence of multiple instances of distribution during that period. Canary testified he found evidence in the eMule program that five child pornography files had been uploaded to other peer-to-peer network users on different dates, and four of the files were uploaded to multiple users. Where, as here, "the prosecution shows several acts, each of which could constitute a separate offense, a unanimity instruction is required." (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1534.)

The trial court's failure to give a unanimity instruction, however, does not require reversal of the distribution conviction. A unanimity instruction is not essential to the jury's understanding of the case " '[w]here the acts were substantially identical in nature, so that any juror believing one act took place would inexorably believe all acts took place.' " (*People v. Beardslee* (1991) 53 Cal.3d 68, 93.) The multiple acts of distribution at issue here were substantially the same in that each involved upload of a file containing child pornography from Armas's computer to another user on his electronic file-sharing network, and the evidence supporting the distributions was the same, i.e., Canary's testimony. Because there was "no realistic possibility" the jury would conclude some of the distributions occurred but not others, the failure to give a unanimity instruction was harmless. (*People v. Ramirez* (1987) 189 Cal.App.3d 603, 614-615.) Failure to give a unanimity instruction is also harmless when the defendant offered the same defense to all criminal acts and the verdict implies the jury rejected it. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 879; *Deletto, supra*, 147 Cal.App.3d at p. 468.) Armas claimed

17

he did not knowingly download *any* child pornography files or intentionally share them with others; he did not distinguish among the various files that were uploaded to other network users; and the jury's guilty verdict indicates it rejected Armas's claim. In sum, because the record provides no rational basis, by way of argument or evidence, for the jury to have distinguished between the multiple acts of distribution, and the jury must have found beyond a reasonable doubt that Armas committed all acts if he committed any, we conclude the trial court's failure to give a unanimity instruction was harmless beyond a reasonable doubt and does not require reversal. (*People v. Curry* (2007) 158 Cal.App.4th 766, 783; *Deletto*, at p. 473.)

C.    *Cumulative Effect of Error*

Armas's final contention is that the trial court's errors, even if harmless when separately considered, combined to deprive him of his due process right to a fair trial. " 'The "litmus test" for cumulative error "is whether defendant received due process and a fair trial." ' " (*People v. Thomas* (2021) 64 Cal.App.5th 924, 971.) "Under the 'cumulative error' doctrine, ' "a series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error." ' " (*Sorden*, *supra*, 65 Cal.App.5th at p. 618; see *Montana v. Egelhoff* (1996) 518 U.S. 37, 53 ["erroneous evidentiary rulings can, in combination, rise to the level of a due process violation"].) We have found only one error, and it was harmless. Hence, Armas's claim of cumulative effect of error necessarily fails. (*People v. Sta Ana* (2021) 73 Cal.App.5th 44, 64; *People v. Lapenias* (2021) 67 Cal.App.5th 162, 181.)

## III.

## DISPOSITION

The order placing Armas on probation is affirmed.

IRION, Acting P. J.

WE CONCUR:

DO, J.

BUCHANAN, J.